# United States Court of Appeals for the Federal Circuit

06-3124

REGINALD CHENEY,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

Arthur B. Spitzer, American Civil Liberties Union of the National Capitol Area, of Washington, DC, argued for petitioner.

Allison Kidd-Miller, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Donald E. Kinner, Assistant Director. Of counsel on the brief was Elizabeth C. Burke, Office of Chief Counsel, Drug Enforcement Administration, United States Department of Justice, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

06-3124

REGINALD CHENEY,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

---

DECIDED:  March 2, 2007

---

Before SCHALL and GAJARSA, <u>Circuit Judges</u>, and MCKINNEY, <u>Chief Judge</u>.[*]

Opinion for the court filed by <u>Circuit Judge</u> SCHALL.  Dissenting opinion filed by <u>Chief Judge</u> MCKINNEY.

SCHALL, <u>Circuit Judge</u>.

Reginald Cheney petitions for review of the final decision of the Merit Systems Protection Board ("Board") that sustained the action of the Drug Enforcement Administration ("DEA" or "agency") indefinitely suspending him from employment. <u>Cheney v. Dep't of Justice</u>, CH0752050326-I-1 (M.S.P.B. Nov. 7, 2005) ("<u>Final Decision</u>").  Because we conclude that Mr. Cheney did not receive the statutory procedural protections to which he was entitled before his suspension, we reverse the

---

[*]     Honorable Larry J. McKinney, Chief Judge of the United States District Court for the Southern District of Indiana, sitting by designation.

decision of the Board and remand the case to the Board for computation of the back pay to which Mr. Cheney is entitled by reason of his improper suspension.

BACKGROUND

I.

At the time of his suspension, Mr. Cheney was a GS-14 criminal investigator and the Resident Agent in Charge ("RAC") of DEA's Cleveland office. Mr. Cheney had been employed by DEA for approximately 18 years. His position, as do all positions within DEA, required a security clearance.

The DEA is a component of the Department of Justice ("DOJ"). On July 27, 2004, DOJ's Office of Professional Responsibility ("OPR") requested that Mr. Cheney be placed on limited duty because it was alleged that he had abused his authority. Mr. Cheney was informed on August 3, 2004, that OPR had requested that he be placed on limited duty because of an ongoing investigation. Subsequently, on September 1, 2004, Mr. Cheney was interviewed by two inspectors from OPR concerning "abuse of authority." The inspectors questioned Mr. Cheney about whether he had approached witnesses during the OPR investigation. As part of the interview process, Mr. Cheney signed a confidentiality agreement in which he agreed that, other than to retained counsel, he would not disclose that he had been interviewed or that OPR was conducting an investigation.

On September 9, 2004, Mr. Cheney's supervisor was notified that Mr. Cheney's security clearance had been suspended "based on allegations of derogatory personal conduct," and would remain suspended "until the completion of an investigation into this matter." Thereafter, by letter dated September 22, 2004, John P. Gilbride, the Special

Agent in Charge of DEA's Detroit Field Division ("SAC Gilbride"), informed Mr. Cheney that he was proposing that Mr. Cheney be indefinitely suspended from employment because of the suspension of his security clearance. The letter stated: "The decision to suspend your security clearance is based on allegations of potentially derogatory personal conduct and possible violations of law and DEA Standards of Conduct. You have failed to comply with security regulations and you have demonstrated a pattern of dishonesty and/or rule violations." The letter informed Mr. Cheney that he had ten days from the date he received the notice of proposed suspension to reply to it. The letter further informed Mr. Cheney that as soon as possible after his answer was received, or after the expiration of the ten-calendar day limit if he chose not to answer, he would be provided with a written decision regarding the proposed suspension. Mr. Cheney received the notice of proposed suspension on September 27, 2004.

On September 28 and 29, 2004, Mr. Cheney contacted the Chief of the Employee Relations Unit and SAC Gilbride, requesting additional information concerning the suspension of his security clearance. From the Employee Relations Unit, Mr. Cheney sought "review of all material regarding the proposed action for indefinite suspension." From SAC Gilbride, Mr. Cheney sought to obtain "the material" on which the proposed indefinite suspension "was based."[1]

---

[1] On September 29, 2004, HRM Consulting Inc. ("HRM"), a self-described "Human Resource Management Company which targets human capital performance issues," wrote John Driscoll, Deputy Chief Inspector at DEA Headquarters in Washington, on Mr. Cheney's behalf that Mr. Cheney had not been provided information about the allegations against him. On October 4, 2004, HRM wrote a letter on Mr. Cheney's behalf that was copied to Mark S. Johnson, Deputy Chief Inspector of DEA's Office of Security Programs. The letter stated that Mr. Cheney had "not received any information which identifies the basis of allegations nor does he have substantive factual information which supports the reasons of the investigation."

Following his inquiry, on October 5, 2004, Mr. Cheney received a memorandum dated October 1, 2004 from Mark S. Johnson, Deputy Chief Inspector of DEA's Office of Security Programs. The letter again notified Mr. Cheney that the suspension of his security clearance was "based upon allegations of derogatory personal conduct." The memorandum stated that the suspension would remain in effect until the investigation into the matter was completed and that Mr. Cheney could contact Mr. Johnson if he had any questions or required further information.

Mr. Cheney requested a 30-day extension of time to respond to the notice of suspension, and on October 7, 2004 he wrote Mr. Johnson, stating:

> On October 5, 2004, I received your letter dated October 1, 2004, which stated that the decision to suspend my security clearance was based upon allegation [sic] of derogatory personal conduct, and the suspension of my clearance would remain in effect until the completions [sic] of an investigation. However, I did not receive any facts, documentation or information relative to the allegations in this matter. Even though I have the right to respond, it is difficult if not impossible to respond to an issue without information. I am therefore, requesting all of the information and evidence relied upon to revoke my security clearance.

On October 19, 2004, the Federal Law Enforcement Officers Association (the "Association"), which at the time was representing Mr. Cheney, wrote Mr. Johnson and requested that the information that Mr. Cheney had sought in his letter of October 7 be provided. In addition, between October 19 and 29, 2004, Mr. Cheney and his counsel wrote letters seeking to obtain the evidence underlying the agency's reasons for suspending his security clearance.

On November 8, 2004, the Association responded to the notice of proposed suspension on Mr. Cheney's behalf, asserting that the DEA had not afforded Mr.

Cheney due process. The Association asserted that Mr. Cheney had never been given notice of the apparently derogatory information that formed the basis for the suspension of his security clearance. Specifically, the Association stated that "[n]either the proposing official nor the deciding official have been able to provide any materials to RAC Cheney other than the notice which suspended Mr. Cheney's clearance" and that OPR and the Office of Security Programs had "yet to respond to requests for information as to the reasons for the suspension of RAC Cheney's security clearance." In due course, DEA gave Mr. Cheney an extension of time through November 29, 2004 to respond further to the proposed indefinite suspension.

On November 17, 2004, Mr. Johnson sent Mr. Cheney a memorandum informing him that his security clearance was suspended. The memorandum provided the following information to Mr. Cheney about the reasons for his security clearance suspension:

> The decision to suspend your security clearance is based upon allegations that you inappropriately queried or caused to be queried Law Enforcement Data Bases and abused the Administrative Subpoena process. Additionally, it is believed that you are in violation of the confidentiality agreement you entered into with the Office of Professional Responsibility during their investigation into these issues.

On November 29, 2004, having submitted a written response through the Association on November 8, Mr. Cheney responded orally to the proposed indefinite suspension. That same day, in a handwritten "Disciplinary Action Summary" Kevin Michael Donnelly, the deciding official, concluded that Mr. Cheney should be suspended indefinitely from employment without pay. Mr. Donnelly wrote that although Mr. Cheney had been "unable to review [the] underlying reasons for [the] security clearance suspension . . . minimal due process was followed in that [Mr. Cheney] was notified of

[his security clearance] suspension, was given . . . the reason for the suspension, and was given an opportunity to respond in writing and orally."

On December 3, 2004, Lawrence A. Berger, general counsel of the Association, called Mr. Johnson to appeal Mr. Cheney's suspension. This phone call resulted in a letter, dated December 16, 2004, in which Mr. Johnson upheld the indefinite suspension of Mr. Cheney's security clearance until "completion of [the] ongoing [OPR] case." In his letter, Mr. Johnson stated that Mr. Cheney had received all the process that was due because he was "fully informed of the reason for [the] clearance suspension."

On January 4, 2005, HRM wrote a letter on Mr. Cheney's behalf to Mr. Johnson. In the letter, HRM stated that Mr. Cheney had authority to sign subpoenas and to cause the criminal databases to be queried as part of his duties to investigate criminal activity, and it suggested that this could occur thousands of times on a yearly basis. At the same time, HRM requested information about who had accessed the system so that Mr. Cheney could review this information because it could "identify the individual(s) who [had] inappropriately queried the database." Finally, HRM asked that Mr. Cheney's case be re-examined, that he be provided with "specificity and detail with regard to the allegations, and that HRM be permitted to examine the case file."

Therefore, on January 14, 2005, Mr. Cheney was formally notified of the agency's final decision to suspend his employment indefinitely because of the suspension of his security clearance. Mr. Cheney also was informed of his right to appeal to the Board.

II.

Mr. Cheney timely appealed his suspension to the Board. On May 25, 2005, following a telephonic hearing, the administrative Judge ("AJ") to whom the appeal was assigned issued an initial decision sustaining DEA's action suspending Mr. Cheney. Cheney v. Dep't of Justice, CH0752050326-I-1 (M.S.P.B. May 25, 2005) ("Initial Decision"). Noting that "[t]he Board's authority to review matters relating to security clearance determinations is limited," id. at 4, the AJ explained nevertheless that "if an adverse action results from a decision to deny a security clearance, an employee is entitled to the procedural protections set forth in 5 U.S.C. § 7513," id. at 8. The AJ cited Lebray v. Department of the Navy, 62 M.S.P.R. 468, 473 (1994), and Kriner v. Department of the Navy, 61 M.S.P.R. 526 (1994), and stated that

> where an indefinite suspension is based on the suspension of a security clearance, the agency must provide the appellant with a meaningful opportunity to respond to the reasons for the indefinite suspension by ensuring that either in the advance notice of the action, or in the earlier access determination, the appellant was notified of the cause that led to the security clearance determination.

Initial Decision at 5-6. The AJ also stated that in King v. Alston, 75 F.3d 657, 662 (Fed. Cir. 1996), this court stated that "'merely providing the employee with information that his access to classified information is being suspended, without more, does not provide the employee with sufficient information to make an informed reply.'" Initial Decision at 9.

Before the Board, Mr. Cheney challenged the DEA's decision to suspend him on the ground that he had not been able to prepare a meaningful response because the agency had given him only "a generalized vague notice of the reasons for suspending his security clearance." Id. at 3. Mr. Cheney argued that it was not enough for the DEA

to describe his alleged misconduct as (1) derogatory personal conduct, (2) possible violations of law and the DEA's standards of conduct, (3) failure to comply with security regulations, and (4) a pattern of dishonesty and rule violations. Id. Mr. Cheney acknowledged that, in Mr. Johnson's November 17, 2004 memorandum, the agency "expressed more particularly than it had before" its reasons for suspending his security clearance. This further explication was not helpful, however, Mr. Cheney argued, because "[s]till, there was no particularization of what the specific prohibited queries of the Agency data base [sic] were and in what way the Appellant abused the administrative subpoena process." Mr. Cheney pointed out that, in his position as RAC of DEA's Cleveland Office, he had reason to query the DEA databases "thousands of times" over the course of his career and that he also had "frequent occasions" to utilize the administrative subpoena process. Under these circumstances, Mr. Cheney contended, he "could not meaningfully prepare an appeal since he did not know which queries or which subpoenas were allegedly inappropriate." Thus, he argued that he was deprived of the procedural protections to which he was entitled under 5 U.S.C. § 7513(b).

The AJ rejected Mr. Cheney's arguments, stating first that "providing greater detail of the agency's reasons for its decision could jeopardize the integrity of the investigation." Initial Decision at 6. The AJ continued by stating that Mr. Cheney's argument that "he could not file a meaningful response to the proposal notice goes to the merits of the security-clearance determination, which, as the Supreme Court has clearly ruled, is not reviewable." Id. at 7 (citing Dep't of the Navy v. Egan, 484 U.S. 518, 528-30 (1988)). The AJ concluded that because Mr. Cheney's security clearance had

already been suspended when his employment suspension was proposed, DEA had satisfied the notice requirement of section 7513(b) by informing Mr. Cheney that his employment suspension was based on his security clearance suspension. Id. Having thus found the procedural requirements of section 7513(b) satisfied, the AJ affirmed Mr. Cheney's indefinite suspension. Id.

The Initial Decision became the final decision of the Board on November 7, 2005, when the Board denied Mr. Cheney's petition for review. Final Decision. This appeal followed. We have jurisdiction to review the Board's final decision under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

### I.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); Kewley v. Dep't of Health & Human Servs., 153 F.3d 1357, 1361 (Fed. Cir. 1998).

The DEA suspended Mr. Cheney from employment under 5 U.S.C. § 7513, which provides that "[u]nder regulations prescribed by the Office of Personnel Management, an agency may take an action covered by [subchapter II of chapter 75]." The actions covered by subchapter II are listed in 5 U.S.C. § 7512, and one of the actions listed is a suspension of more than fourteen days. See Thomas v. Gen. Servs. Admin., 756 F.2d 86, 88 (Fed. Cir. 1985) (indefinite suspension is a covered action);

5 C.F.R. § 752.401. When an employee is the subject of an action under section 7513, he or she is entitled to

> (1) at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action;

> (2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

> (3) be represented by an attorney or other representative; and

> (4) a written decision and the specific reasons therefore at the earliest practicable date.

5 U.S.C. § 7513(b). An employee may appeal an indefinite suspension to the Board. Id. § 7513(d). In a section 7513 appeal, the provisions of 5 U.S.C. § 7701 apply to the proceedings before the Board, which include the right to a hearing for which a transcript must be kept and the right to be represented by an attorney.

On appeal, Mr. Cheney renews the arguments he made before the Board. He states that although the Board summarized the law correctly, it failed to apply it properly. He argues that due process entitled him to a statement of the "specific reasons" underlying the suspension of his security clearance and that without such a statement he was unable to make a meaningful and informed response to the proposed action. Relying chiefly on the decision of this court in King v. Alston, Mr. Cheney contends that the broad statement that he engaged in "derogatory personal conduct and possible violations of law and DEA Standards of Conduct" and even the more specific statement that he "inappropriately queried or caused to be queried Law Enforcement Data Bases and abused the Administrative Subpoena process," did not provide him with

the information he needed to make a meaningful and informed response to the charges against him.

The government responds by pointing to 5 U.S.C. § 7513(b). It argues that "[a]s the term 'notice' suggests, the employee need only receive enough information about the underlying security clearance determination to permit the preparation of an informed reply to the proposed indefinite [employment] suspension." The government asserts that the notice provided to Mr. Cheney allowed him "to focus his response on his personal conduct, rather than acts he may have undertaken in his official capacity, and on the legality of that conduct." Further, it argues, Mr. Cheney did make a meaningful reply, including responding orally to the November 17, 2004 memorandum from Mr. Johnson. The government explains that by looking at the arguments Mr. Cheney made to the agency, it is clear that he did have enough information to make an informed reply. Finally, at oral argument, the government argued that all section 7513 and due process require is proving that Mr. Cheney's position requires a security clearance, that he does not have a security clearance, and that he was given notice of the proposed employment suspension.

We consider first the law pertinent to this case.

II.

In Department of the Navy v. Egan, the Supreme Court held that the Board has no authority to review the merits of a security clearance determination. 484 U.S. at 529. In that case, Egan was hired by the Department of the Navy on the condition that he obtain a security clearance. Id. at 520. The Navy denied Egan his security clearance because of criminal convictions and alcohol problems. Id. at 521. Due to his failure to

receive the required security clearance, Egan was placed on administrative leave. Id. at 522. Egan appealed the Navy's refusal to grant him a security clearance to the Board, which held that it could not review the merits of a security clearance determination. It therefore sustained the action of the Navy placing Egan on administrative leave because it concluded that the requirements of minimal due process had been satisfied. Egan v. Dep't of the Navy, 28 M.S.P.R. 509, 523 (1985). Egan appealed to this court, which held that the Board should treat a security clearance determination "as any other adverse action taken under section 7512" with the "same full process and standards and scope of review, established by law and precedent." Egan v. Dep't of the Navy, 802 F.2d 1563, 1572 (Fed. Cir. 1986). Following this court's decision, the Supreme Court granted the government's petition for a writ of certiorari and reversed. The Court held that the Federal Circuit had erred in concluding that the Board had jurisdiction to consider the merits of a security clearance determination. Egan, 484 U.S. at 530-31. The Court explained that

> An employee who is removed for "cause" under § 7513, when his required clearance is denied, is entitled to the several procedural protections specified in that statute. The Board then may determine whether such cause existed, whether in fact clearance was denied, and whether transfer to a nonsensitive position was feasible. Nothing in the Act, however, directs or empowers the Board to go further.

Id. at 530.

Subsequent to Egan, we rendered our decision in King v. Alston. In that case, Alston's security clearance was suspended because his employing agency determined that he "may suffer from a medical condition which requires further investigation and evaluation." Alston, 75 F.3d at 659. A security clearance was a condition of Alston's employment. Accordingly, when his security clearance was suspended, Alston was

placed on enforced leave, an action that Alston appealed to the Board. The Board held that Alston's due process rights were violated when the agency did not provide him with an opportunity to reply to the agency's notice concerning the suspension of his security clearance. Alston v. Dep't of the Navy, 48 M.S.P.R. 694, 699 (1991). OPM petitioned for reconsideration, and in a split decision, that Board reversed its earlier decision and held that Alston was not entitled to any notice of reasons because due process rights do not attach to the suspension of a security clearance. Alston v. Dep't of the Navy, 58 M.S.P.R. 158, 163 (1993). Finally, in another split decision, the Board again reconsidered and held that Alston was denied due process because he was never given reasons for his employment suspension with enough specificity to respond. Alston v. Dep't of the Navy, 62 M.S.P.R. 19, 24 (1994). OPM appealed to this court. Alston, 75 F.3d at 660.

We limited our review in Alston to whether "the agency provided Alston with the procedural protection guaranteed by 5 U.S.C. § 7513(b) when it placed him on enforced leave."[2] Id. at 662. We expressly noted that we were neither "reviewing the merits of the agency's decision to suspend Alston's access to classified information" nor "the procedures the agency followed in denying such access." Id. We stated that

---

[2] Under Executive Order 12968, § 5.2(a)(1), 60 Fed. Reg. 40245, 40252 (1995), an employee whose security clearance is revoked—as opposed to suspended—"shall be . . . provided as comprehensive and detailed a written explanation of the basis for that conclusion as the national security interests of the United States and other applicable law permit."

section 7513(b) entitles an employee to notice of the reasons for the suspension of his access to classified information when that is the reason for placing the employee on enforced leave pending a decision on the employee's security clearance. Such notice provides the employee with an adequate opportunity to make a meaningful reply to the agency before being placed on enforced leave. Merely providing the employee with information that his access to classified information is being suspended, without more, does not provide the employee with sufficient information to make an informed reply to the agency before being placed on enforced leave.

Id. at 661-62. However, we concluded that Alston had received all of the process he was due because he was "able to focus his response on his medical status, rather than to have to guess whether the agency's action was based on disloyalty, unreliability, or other possible ground for suspension of access to classified information." Id. at 662. We noted that Alston met with agency officials and offered medical evidence, which was considered before he was placed on enforced leave. Id. We therefore reversed the decision of the Board because we determined that Alston received all of the process he was due. Id. at 663.

We decided another case growing out of the suspension of a security clearance in Hesse v. Department of State, 217 F.3d 1372 (Fed. Cir. 2000). In that case, Hesse's security clearance was suspended, resulting in an indefinite suspension from employment. Id. at 1374. Hesse appealed his suspension to the Board, which upheld the suspension. Hesse v. Dep't of State, 82 M.S.P.R. 489, 492-93 (1999). The Board explained that it could only inquire into whether the procedures required by section 7513 had been met. Proceeding on that basis, the Board held that the requirements of the statute were met because "the agency here twice advised the appellant of the specific reasons for his security clearance suspension and twice provided him an opportunity to respond to that action." Id. at 491. Thereafter, Hesse petitioned this court for review.

We affirmed the decision of the Board. In so doing, we explained three principles that we drew from the Supreme Court's decision in Egan:

> (1) there is no presumption that security clearance determinations will be subject to administrative or judicial review, as those determinations are committed to the broad discretion of the responsible Executive Branch agency; (2) unless Congress specifically provides otherwise, the Merit Systems Protection Board is not authorized to review security clearance determinations or agency actions based on security clearance determinations; and (3) when an agency action is challenged under the provisions of chapter 75 of title 5, the Board may determine whether a security clearance was denied, whether the security clearance was a requirement of the appellant's position, and whether the procedures set forth in section 7513 were followed, but the Board may not examine the underlying merits of the security clearance determination.

Hesse, 217 F.3d at 1376.

The teaching we glean from Egan, Alston, and Hesse is this: in a case involving a suspension resulting from the suspension of a security clearance, both the Board's and this court's review is limited. Neither the Board nor this court may review the underlying merits of an agency's decision to suspend a security clearance. Egan, 484 U.S. at 825-26; Hesse, 217 F.3d at 1376; Alston, 75 F.3d at 661-62. All the Board and this court may do is "determine whether a security clearance was denied, whether the security clearance was a requirement of the appellant's position, and whether the procedures set forth in section 7513 were followed." Hesse, 217 F.3d at 1376. Under section 7513, the employee must receive "written notice . . . stating the specific reasons" for the suspension of his or her security clearance "when that is the reason" for suspending the employee "pending a decision on the employee's security clearance." Alston, 75 F.3d at 661. The requirements of section 7513 are met if, as we stated in Alston, the notice "provides the employee with an adequate opportunity to make a meaningful reply to the agency" before being suspended. Id. In other words, the

employee must be given enough information to enable him or her to make a meaningful response to the agency's proposed suspension of the security clearance. "Merely providing the employee with information that his access to classified information is being suspended, without more, does not provide the employee with sufficient information to make an informed reply to the agency" before being suspended. Id. at 662.

III.

Turning to the case before us, we hold that the procedural requirements of section 7513 were not met. The Board itself found that the DEA did not provide any specific information regarding the time frame of Mr. Cheney's alleged misconduct, and "did not identify any specific queries of the data base [sic] nor did the agency describe the manner in which [Mr. Cheney] abused the administrative subpoena process." **[JA 7]** Initial Decision at 4. These findings by the Board are undisputed.

In our view, the Board's own findings demonstrate that the requirements of section 7513, as explained in Alston, were not met in this case. Indeed, at oral argument, counsel for the government forthrightly acknowledged that the reasons given to Mr. Cheney for the suspension of his security clearance were "vague." First, the DEA told Mr. Cheney that his security clearance was being suspended "based on allegations of potentially derogatory personal conduct and possible violations of law and DEA standards of conduct." The notice of suspension also stated that Mr. Cheney had "failed to comply with security regulations" and that he had "demonstrated a pattern of dishonesty and/or rule violations." We fail to see how Mr. Cheney could have made a meaningful response to such broad and unspecific allegations when there was no indication of when his alleged conduct took place or what it involved. Nor do we think

that it was possible for Mr. Cheney to make a meaningful response based upon the information that he was given in Mr. Johnson's memorandum of November 17, 2004. In his memorandum, Mr. Johnson stated that Mr. Cheney had "inappropriately queried or caused to be queried Law Enforcement Data Bases," had "abused the Administrative Subpoena process," and had acted "in violation" of the confidentiality agreement into which he had entered with OPR during its investigation. In our view, the November 17 memorandum was akin to informing Mr. Cheney that his security clearance was being suspended because he had robbed a bank, without telling him where the bank was and when he had robbed it, particularly in view of the fact that it is undisputed that Mr. Cheney regularly had reason to cause the database to be queried. Mr. Cheney clearly was not entitled to the detailed information that HRM requested. Egan clearly bars the kind of civil case discovery that HRM sought for Mr. Cheney. Mr. Cheney, however, was entitled to more information about the allegations against him than he received.

The problem is that the limited information provided to Mr. Cheney put him in the position where, for all intents and purposes, he had to "guess" at the reason for his security clearance suspension. See Alston, 75 F.3d at 662 ("[The employee] was . . . able to focus his response . . . rather than have to guess whether the agency's action was based on disloyalty, unreliability, or other possible ground for suspension of access to classified information." (emphasis added)). While Mr. Cheney was told, in general terms, the reasons for the suspension of his security clearance, he was not given the allegations that supposedly supported those reasons so that he could make a meaningful response to the proposed suspension. For example, he was not told what the nature of his alleged derogatory personal conduct was. Neither was he told what

laws and DEA standards of conduct he had violated, or when he had allegedly improperly caused the database to be queried. Thus, Mr. Cheney's case is distinguishable from that of the employee in Alston. The employee in Alston was told that his security clearance was being suspended because he "possibly suffered from a medical condition which requires further investigation and evaluation." 75 F.3d at 659. The employee thus knew that he had to focus on his own medical condition in order to respond to the agency's action. However, Mr. Cheney, while he was told the general nature of the allegations against him, was not given the minimal information he needed to respond to those allegations.

Finally, we do not agree with the government that acceptance of Mr. Cheney's arguments on appeal would amount to a holding that DEA had to prove that Mr. Cheney committed the acts under investigation before suspending him from his position. All we hold today is that DEA failed to provide Mr. Cheney with the information he needed to make "a meaningful response" to the charges against him. Had DEA provided Mr. Cheney with that information, considered his response to the charges against him, and then suspended his security clearance, Egan would have barred review of the agency's action.

For the foregoing reasons, we hold that, in suspending Mr. Cheney, the DEA failed to meet the procedural requirements of 5 U.S.C. § 7513.[3] Mr. Cheney's indefinite suspension was therefore improper, and he is entitled to recover back pay for the period of the improper suspension. See Gose v. U.S. Postal Serv., 451 F.3d 831, 840 (Fed.

---

[3] The Board's conclusion that Mr. Cheney received the notice to which he was entitled under section 7513 because he was told that his employment suspension was based on his security clearance plainly is at odds with what we said in Alston. See 75 F.3d at 661-62.

Cir. 2006) ("Accordingly, Gose is to be immediately reinstated to his position, with back pay and credit, for all purposes, for the period of his improper removal from the Postal Service."); McFarland v. Dep't of the Navy, 62 M.S.P.R. 161, 165-66 (1994) (ordering back pay when the protections of section 7513 were not provided in suspending an employee).

## CONCLUSION

The final decision of the Board sustaining Mr. Cheney's indefinite suspension is reversed. The case is remanded to the Board for further proceedings consistent with this opinion.

REVERSED and REMANDED

# United States Court of Appeals for the Federal Circuit

06-3124

REGINALD CHENEY,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.


MCKINNEY, <u>Chief Judge</u>, dissenting.

This case illustrates the tension that exists between security clearance determinations, which are not reviewable by the Board or the court, and adverse employment actions governed by 5 U.S.C. § 7513, a situation that implicates due process concerns. The issue before the court is whether Cheney received the statutory procedural protections mandated by § 7513, specifically whether Cheney received sufficient notice of the reasons for his proposed employment suspension so that he had a meaningful opportunity to respond to the proposal. Because I believe that application of the narrow standard of review to the circumstances of this case compels a conclusion that the minimal requirements of due process were satisfied, I respectfully dissent.

## I.    BACKGROUND

While the majority has noted many of the facts necessary for consideration of this case, the following additional facts provide a more complete context for understanding the parties' contentions:

Shortly after Cheney was notified that he was being placed on limited duty because of an ongoing investigation, the local print and broadcast media ran stories about the allegations against Cheney, referencing in particular his use of the criminal database.  Cheney complained about the media stories to the DOJ.  After the media reported on the allegations against Cheney, two investigators from the Office of Professional Responsibility ("OPR") interviewed Cheney.

After Cheney received the September 22, 2004, letter from his supervisor, John P. Gilbride ("Gilbride"), proposing an indefinite suspension from employment, Cheney requested a thirty-day extension of time to respond to the notice of suspension of his employment.  Cheney was granted an extension until November 8, 2004, to submit his written response to the proposed employment suspension.

On October 4, 2004, HRM Consulting, Inc. ("HRM") wrote a letter on Cheney's behalf that was copied to Johnson.  In that letter, HRM expressed that Cheney "has not received any information which identifies the basis of allegations nor does he have substantive factual information which supports the reasons of the investigation."  HRM requested that supporting documentation be provided to Cheney.

Between October 19 and October 29, 2004, Cheney and his counsel wrote multiple letters attempting to obtain the evidence underlying the agency's reasons for suspending Cheney's security clearance.  Specifically, those letters requested "detailed

information relative to the suspension of [Cheney's] security clearance;" requested "the information and evidence relied upon to revoke [Cheney's] security clearance; and inquired about the existence of "any material relied upon to propose the indefinite suspension," requesting copies of the same.

On November 8, 2004, Cheney's counsel submitted a written response to the proposed employment suspension on Cheney's behalf. Counsel urged that the proposed indefinite suspension be rescinded because there was "a lack of a preponderant evidence showing that the indefinite suspension . . . will . . . promote the efficiency of the Drug Enforcement Administration." Counsel further requested and reserved the right for Cheney to respond orally to the charges against him at a later date. Counsel then argued that Cheney had not been afforded "minimal due process" because Cheney had never been given notice of or been questioned about the "derogatory information" the agency had obtained that caused it to suspend Cheney's security clearance. Counsel noted the efforts by both Cheney and his office to determine "what scrap of information; what bit of evidence, has been utilized by the Agency to suspend" Cheney's security clearance and the inability to obtain those "materials." Counsel concluded his letter by repeating his request that the agency rescind its proposed employment suspension.

On January 4, 2005, HRM wrote a letter on Cheney's behalf to the deciding official to express its disappointment with the deciding official's conclusion that Cheney should be indefinitely suspended. HRM noted that Cheney had authority to sign subpoenas and to cause the criminal databases to be queried as part of his duties to investigate criminal activity, and it posited that this could occur thousands of time on a

yearly basis. Acknowledging that it would be illegal to use the databases for anything other than law enforcement purposes, HRM denied that Cheney had ever conducted a database inquiry check, claiming that Cheney did not even have a password for accessing the system. Indeed, HRM suggested that the allegations against Cheney could be the result of a disgruntled subordinate. Therefore, HRM requested detailed information about who had accessed the system so that Cheney could review this information because it could "identify the individual(s) who [had] inappropriately queried the database." HRM asserted that the information should be provided to Cheney because "the 'allegations' are the basis for changing his condition of employment, [the] basis for his security clearance suspension, and [the] basis for security violations."

## II. DISCUSSION

As the majority correctly notes, the court's scope of review is limited. Moreover, precedent has clearly established that this court may not review the underlying merits of an agency's decision to suspend a security clearance. Indeed, it is worth repeating that no one has a "right" to a security clearance and that decisions regarding such matters involve "a sensitive and inherently discretionary judgment call" that is "committed by law to the appropriate agency of the Executive Branch." Dep't of the Navy v. Egan, 484 U.S. 518, 527-28, 108 S. Ct. 818, 98 L. Ed. 2d 918 (1988). Thus, like the majority, I agree that this case turns on whether the procedures set forth in § 7513 were followed, specifically the adequacy of the notice of the reasons that were provided to Cheney for his security clearance suspension. However, this is where the majority and I part company.

The majority states that the requirements of § 7513 are met if "the notice 'provides the employee with an adequate opportunity to make a meaningful reply to the agency' before being suspended." Slip Op. at 16 (quoting King v. Alston, 75 F.3d 657, 662 (Fed. Cir. 1996)). It seems to me that the quote is taken out of context. To quote more fully, the Alston court stated the following:

> [S]ection 7513(b) entitles an employee to notice of the reasons for the suspension of his access to classified information when that is the reason for placing the employee on enforced leave pending a decision on the employee's security clearance. Such notice provides the employee with an adequate opportunity to make a meaningful reply to the agency before being placed on enforced leave. Merely providing the employee with information that his access to classified information is being suspended, without more, does not provide the employee with sufficient information to make an informed reply to the agency before being placed on enforced leave.

Alston, 75 F.3d at 661-62. Thus, the court in Alston noted the unique situation that occurs when security clearance suspensions are the basis for adverse employment actions against an employee covered by § 7513: that employee is entitled to notice of the reasons for the suspension of his access to classified information. But this language does not explain the level of detail this notice must provide in cases involving security clearance suspensions, which is the precise question that this case involves.

To understand how detailed the notice of the reasons must be in cases such as this, one need only look at the paragraph preceding the one quoted above from Alston. There, this court emphasized that a notice "is sufficient . . . when it apprises the employee of the nature of the charges 'in sufficient detail to allow the employee to make an informed reply.'" Id. at 661 (quoting Brook v. Corrado, 999 F.2d 523, 526 (Fed. Cir. 1993) (internal citation omitted)). The facts of Alston shed additional light on this question. As the majority notes, Alston's security clearance, a condition of his

employment, was suspended because the agency had concerns that he "may suffer from a medical condition which requires further investigation and evaluation." Alston, 75 F.3d at 659. The agency did not identify any specific medical condition. Id. With his security clearance suspended, Alston no longer had access to his work site and he was placed on administrative leave. Id. After reconsidering the case on two different occasions, the Board ultimately found that Alston had been denied meaningful due process and the procedural protections of § 7513 because it concluded that the agency had not provided adequate notice of the reasons for the suspension. Id. The agency appealed. While this court agreed with the Board that an agency "must provide some indication of the reasons" for its decision to suspend a security clearance, it nevertheless reversed the Board's decision. Id. at 661. The court based its decision on the fact that the agency had informed Alston that his security clearance was being suspended based on his medical condition, which permitted Alston "to focus his response on his medical status." Id. at 662. Moreover, Alston was permitted to respond to the agency by submitting medical evidence that the agency considered before it placed him on enforced leave. Id. Based on these circumstances, this court concluded that Alston had received sufficient procedural protection before being placed on leave. Id. at 663.

In my opinion, the result in Alston dictates affirming the Board in Cheney's case. By my count, Cheney received a total of seven different reasons for the security clearance suspension:

1. "[A]llegations of potentially derogatory personal conduct" (Gilbride's September 22, 2004, letter; Johnson's October 1, 2004, memorandum);

2. "[P]ossible violations of law and DEA Standards of Conduct" (Gilbride's September 22, 2004, letter);

3. Failure "to comply with security regulations" (Gilbride's September 22, 2004, letter);

4. A "demonstrated . . . pattern of dishonesty and/or rule violations" (Gilbride's September 22, 2004, letter);

5. Allegations that Cheney "inappropriately queried or caused to be queried Law Enforcement Data Bases [sic]" (Johnson's November 17, 2004, memorandum);

6. Allegations that Cheney "abused the Administrative Subpoena process" (Johnson's November 17, 2004, memorandum); and

7. A belief that Cheney was "in violation of the confidentiality agreement [he] entered into with [OPR] during [its] investigation into these issues" (Johnson's November 17, 2004, memorandum).

As Cheney's counsel conceded at oral argument, the reasons given to Cheney for his security clearance suspension were more specific than the reason given in Alston. Indeed, the first four reasons, when viewed in conjunction, informed Cheney that the suspension was not based on some work performance issue but rather on his personal conduct and noncompliance with rules and regulations. Moreover, the last three reasons provided Cheney with three concrete situations upon which he was invited to focus his response to the proposed employment action.

Nonetheless, Cheney's counsel argued that the context of this case shows that Cheney could not make an informed response absent more detailed information. I must disagree. The record clearly shows that Cheney was adequately aware of the allegations against him as he was able to formulate a meaningful response to the agency. Specifically, on January 4, 2005, HRM wrote to the agency on Cheney's behalf regarding the allegations that he had abused the subpoena process and inappropriately

queried the criminal database. HRM essentially argued that Cheney had not abused his authority with respect to either of these events, and it denied that Cheney had ever even conducted a database inquiry check because he did not have a password to access the system. This letter reveals that Cheney could, and did, focus on the allegations that he had abused the subpoena process and inappropriately queried the criminal databases to render a response. Thus, the context of this case does not provide any reason to depart from the precedent established by Alston.

It seems to me that the majority misses the mark. This is most evident from the use of an inapt analogy likening this case to an allegation that Cheney robbed a bank. Slip Op. at 17.[1] The majority would insist that Cheney be given more detailed information, such as dates of when his violations occurred, some notion of who his accusers were, etc., notwithstanding the fact that security clearance matters are discretionary, can be highly sensitive, and there was an ongoing investigation that could have been jeopardized by revealing too many details. But this case is not a criminal matter requiring a bill of particulars; it is a civil matter, and Cheney only needed to be given enough information to enable him to focus his response. Indeed, the

---

[1] The majority may have adopted this analogy from Cheney's counsel, who at oral argument suggested that if Cheney was arrested for robbing a bank and later had his security clearance suspended for "robbing a bank," he would know what the agency meant, and the world would scoff at his argument that he needed more detailed information. In contrast, counsel argued that if Cheney had not robbed a bank, he would need more information. Counsel's use of the analogy is itself flawed because, to borrow from the criminal context, it suggests that the sufficiency of the notice would depend on an employee's "guilt or innocence" of the allegations.

06-3124                                          8

circumstances of this case show that he was not traversing through some billowing fog of confusion but was in fact aware of what the allegations were.[2]

Moreover, the majority's position appears to disregard what Cheney was seeking from the agency by his requests for "additional information." Slip Op. at 3. Cheney was not seeking information to shed light on what the allegations were; he was seeking details—indeed, evidence—in order to defend himself on the merits of the security clearance suspension, which are not reviewable. See Egan, 484 U.S. at 528-30. In fact, Cheney's counsel made this point very clear in the November 8, 2004, written response when he indicated Cheney's efforts to determine "what scrap of information; what bit of evidence, has been utilized by the Agency to suspend" Cheney's security clearance.[3] This is a far cry from saying that Cheney had no idea to what the agency was referring or that he could not formulate any response to the allegations against him. In sum, Cheney's arguments that he needed more detailed information relate, not to the notice requirements, but to the merits of the security clearance determination, an argument that this court should not entertain.[4]

---

[2] A prime example of Cheney's understanding is evinced by HRM's focus on the database inquiries, the basis for the media reports about which Cheney complained to the DOJ. Specifically, HRM argued that Cheney had authority to cause the criminal database to be queried, that this could happen thousands of times on a yearly basis, and that Cheney had never conducted a database inquiry check because he did not have a password to access the system.

[3] HRM made similar pleas for more detailed information on Cheney's behalf, pleas that the majority acknowledges were "civil case discovery" to which Cheney was not entitled. Slip Op. at 17.

[4] In fact, this is exactly the conclusion that the administrative judge reached in his Initial Decision that was affirmed by the Board. Moreover, this court has previously rejected similar arguments for this very reason. See Parker v. Dep't of the Navy, 86 F. App'x 415, 417-18 (Fed. Cir. 2004).

Furthermore, Johnson's November 17, 2004, memorandum advised Cheney that the suspension was based in part on the agency's belief that Cheney had breached the confidentiality agreement he signed when he was interviewed by the two investigators from OPR. This reason for suspending Cheney's security clearance was sufficient by itself to adequately apprise Cheney why he was being suspended. The reason does not require much elaboration; put simply, one breaches a confidentiality agreement by discussing the subject matter with an unauthorized individual. In this case, the record supports the agency's concerns that Cheney had done just that. Specifically, HRM wrote letters to the agency on Cheney's behalf discussing the allegations and requesting copies of the file materials, which suggests that Cheney discussed the matter with HRM. There is no evidence that HRM was Cheney's retained counsel, and the terms of the confidentiality agreement forbade Cheney from speaking to anyone except retained counsel. Moreover, unlike the allegations for the database queries and abuse of the subpoena process, Cheney never complained that he needed more details such as a time period for this allegation. Indeed, this is clearly not a matter that he could claim might have occurred "thousands of times." In short, this reason did not require more explanation, and the fact that Cheney chose not to respond to it does not mean that he was unable to do so.

In deciding to reverse in this case, the majority departs from Alston and the standard of review therein because it requires more information than is necessary to satisfy due process concerns in the unique cases that involve security clearances. Such matters are left to the discretion of the agency, and a security clearance is something to which Cheney has no right or entitlement. The majority therefore treads

into territory left to the agency's discretion and its opinion is contrary to the principle that this court does not review the basis for or adequacy of security clearance determinations. In doing so, the majority upsets the delicate balance between according deference to the agency on security clearance determinations and satisfying due process concerns of the notice requirement under § 7513 that Egan and cases like Alston have struck in favor of the agency's discretion. In contrast, an affirmance here respects that delicate balance, avoids unsavory results like potentially jeopardizing investigations, and satisfies due process concerns in cases involving security clearances and the notice requirement under § 7513.

## III. CONCLUSION

Based on the circumstances of this case, I would find that Cheney had sufficient information to formulate a response. The reasons given for the security clearance suspension were certainly more specific than the reason provided in Alston. Further, just as in Alston, the facts reveal that Cheney was able to make a response to the allegations. Therefore, I believe that the final decision of the Board sustaining Cheney's indefinite suspension should be affirmed. Accordingly, I must respectfully dissent.