NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DAVID LUCENA,**
*Petitioner*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent*

---

2019-1974

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-19-0097-I-1.

---

Decided: March 3, 2020

---

KEVIN CURTIS CRAYON, II, Crayon Law Firm, LLC, Kennesaw, GA, for petitioner.

GEOFFREY MARTIN LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, ALLISON KIDD-MILLER, ROBERT EDWARD KIRSCHMAN, JR.

---

Before WALLACH, MAYER, and STOLL, *Circuit Judges.*

PER CURIAM.

Petitioner David Lucena seeks review of a final decision of the Merit Systems Protection Board ("MSPB") affirming his indefinite suspension from duty and pay[1] by the U.S. Department of Justice ("DOJ") for approximately seven months, while resolution of his suspended security clearance was pending. *See Lucena v. Dep't of Justice*, No. DC-0752-19-0097-I-1, 2019 WL 1242602 (M.S.P.B. Mar. 13, 2019) (P.A. 1–15) (Final Decision) at P.A. 1.[2, 3] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012). We affirm.

## BACKGROUND

Mr. Lucena is a Telecommunications Specialist in the Operational Support Division of the DOJ's Drug Enforcement Agency ("DEA"). S.A. 97; *see* S.A. 97–100 (Joint Submission of Stipulated Facts). Mr. Lucena's position, like all positions within the DEA, is classified as "Critical

---

[1] "Indefinite suspension" is "the placing of an employee in a temporary status without duties and pay pending investigation, inquiry, or further agency action." 5 C.F.R. § 752.402 (2016).

[2] "P.A." refers to the Petitioner's Appendix attached to Mr. Lucena's brief. "S.A." refers to the Supplemental Appendix attached to the DOJ's brief.

[3] An administrative judge issued an initial decision on March 13, 2019, *see* P.A. 1, which became final on April 17, 2019, as neither Mr. Lucena nor the DOJ filed a petition for review, *see* P.A. 15; *see also* 5 C.F.R. § 1201.113 (2019) (providing that "[t]he initial decision of the judge will become the [MSPB]'s final decision [thirty-five] days after issuance" unless, inter alia, "(a) . . . any party files a petition for review"). Therefore, we refer to the Initial Decision as the MSPB's Final Decision.

Sensitive," meaning it requires eligibility for access to National Security Information ("NSI"). S.A. 97.

On March 28, 2016, the Deputy Chief Inspector ("DCI") in the DEA's Office of Security Programs, notified Mr. Lucena that he was suspending Mr. Lucena's security clearance and access to NSI and DEA Information Technology systems. P.A. 26 (External Memorandum). The DCI explained that Mr. Lucena's suspension was to "remain in effect pending a final decision regarding revocation of [his] access to NSI," and the "conclusion of any related administrative proceedings." P.A. 26; *see* S.A. 97–98. The External Memorandum did not explain why Mr. Lucena's security clearance had been suspended. P.A. 26.

The same day, in an internal memorandum, the DCI notified the Deputy Assistant Administrator ("DAA") of the DEA's Human Resources Division that Mr. Lucena's security clearance had been suspended. P.A. 28; *see* P.A. 28–29 (Internal Memorandum). The Internal Memorandum explained that a preliminary review of Mr. Lucena's Office of Professional Responsibility ("OPR") investigative file had "identified three separate matters that demonstrate[d] questionable judgment and trustworthiness, lack of candor, unwillingness to comply with rules or regulations, and driving while under the influence (of alcohol)." P.A. 28; *see* P.A. 28–29 (detailing the three matters). Mr. Lucena was not sent a copy of the Internal Memorandum. P.A. 55.

On April 13, 2016, the DAA notified Mr. Lucena that, in light of his suspended security clearance, the DAA "propose[d] to indefinitely suspend [Mr. Lucena] without pay . . . until a final decision regarding the revocation of [his] access to NSI and any resulting administrative action [was] effected." P.A. 31; *see* P.A. 31–33 (Notice). The Notice explained that Mr. Lucena's security clearance had been suspended based on the three separate matters identified in his OPR investigative file. P.A. 31. It then detailed those matters: (1) a February 2015 email from Mr.

Lucena's daughter alleging that Mr. Lucena had "engaged in threatening behavior" and "verbal and physical abuse"; (2) a September 14, 2014, complaint from Mr. Lucena's co-worker made through the unit chief ("UC")  in the DEA's Office of Investigative Technology, alleging that Mr. Lucena had "engaged in unwarranted, highly agitated behavior" during an employee training, that Mr. Lucena had "denied the claim when confronted by the UC," and that "[s]ince then, several of [Mr. Lucena's] co-workers" had "reported that [he] continued to engage in similar behavior" thereafter; and (3) three separate October 9, 2015, charges filed by local police against Mr. Lucena for "driving while intoxicated, impersonating a law enforcement officer, and refusing a breathalyzer examination." P.A. 31–32. The Notice informed Mr. Lucena of his "right to review the material upon which [the proposed indefinite suspension] [was] based," his right to answer the Notice either orally, in writing, or both, and his "right to have a representative or attorney assist [him][.]" P.A. 32.

In May 2016, Mr. Lucena, through counsel, provided a written response to the Notice. P.A. 47–53 (Written Reply); *see* S.A. 100. Mr. Lucena argued that the DOJ had "failed to provide Mr. Lucena with information and documentation necessary . . . to respond to the [Notice]," P.A. 50–51, and challenged the "specific bases underlying" the suspension of his security clearance, P.A. 51. He also presented, through counsel, an oral response before the Deciding Official of the DEA's Human Resources Division. S.A. 70–71 (notes taken during Mr. Lucena's oral response); *see* S.A. 100. After considering "the evidence of record," the Deciding Official informed Mr. Lucena that he had found Mr. Lucena's indefinite suspension "appropriate in order to promote the efficiency of the service[.]" S.A. 68; *see* S.A. 68–69 (Suspension Letter). The Deciding Official concluded that Mr. Lucena had been "afforded due process." S.A. 68; *see* S.A. 100. The Suspension Letter indicated that Mr. Lucena was "indefinitely suspend[ed] . . . without

pay . . . upon [his] receipt of [the] letter, pending a final decision regarding revocation of [his] eligibility for access to NSI" and finalization of "any resulting administrative action." S.A. 68 (emphases omitted).

Mr. Lucena was suspended from his position in May 2016. S.A. 100. Approximately seven months later, in December 2016, the DCI "reinstated [Mr. Lucena's] access to NSI," reinstated his "security clearance," and directed Mr. Lucena to return to duty on December 27, 2016. S.A. 20. In November 2018, Mr. Lucena appealed his indefinite suspension to the MSPB. P.A. 1; *see* S.A. 91–92 (Order on Approved Issues). The MSPB affirmed the DOJ's action, concluding, inter alia, that Mr. Lucena had "failed to show that the [DOJ] [had] denied him the due process to which he was entitled," P.A. 11, and "ha[d] not shown that the [DOJ's] action was the result of harmful procedural error," P.A. 8.

## DISCUSSION

### I. Standard of Review and Legal Standard

We will uphold an MSPB decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "obtained without procedures required by law, rule, or regulation having been followed"; or, "unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2012); *see Grover v. Office of Pers. Mgmt.*, 828 F.3d 1378, 1382 (Fed. Cir. 2016) (similar) (citing 5 U.S.C. § 7703(c)). "The petitioner bears the burden of establishing error in the MSPB's decision." *Jenkins v. Merit Sys. Prot. Bd.*, 911 F.3d 1370, 1373 (Fed. Cir. 2019) (internal quotation marks, alteration, and citation omitted).

The MSPB has limited "authority . . . to review a security-clearance determination." *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988). The MSPB cannot "review the substance of the security[-]clearance determination[.]" *Kaplan v. Conyers*, 733 F.3d 1148, 1151 (Fed. Cir. 2013) (en banc)

(citing *Egan*, 484 U.S. at 530–31). Rather, it may only review: "(1) whether an [administrative agency] determined the employee's position required a security clearance; (2) whether the clearance was denied or revoked; (3) whether the employee was provided with the procedural protections specified in 5 U.S.C. § 7513; and (4) whether transfer to a nonsensitive position was feasible." *Id.* (quoting *Egan*, 484 U.S. at 530). Under 5 U.S.C. § 7513, an agency must provide an employee with "advance written notice" of an adverse action, "stating the specific reasons for the proposed action[.]" 5 U.S.C. § 7513(b)(1). Such notice must "apprise[] the employee of the nature of the charges in sufficient detail to allow the employee to make an informed reply." *King v. Alston*, 75 F.3d 657, 661 (Fed. Cir. 1996) (internal quotation marks and citations omitted). It need not, however, "include explicitly every element of every charge underlying the proposed action." *Brook v. Corrado*, 999 F.2d 523, 526–27 (Fed. Cir. 1993). This means that, when an employee is suspended from duty and pay "pending a decision on the employee's security clearance," § 7513(b) "entitles [the] employee to notice of the reasons for the suspension of his [or her] access to classified information[.]" *King*, 75 F.3d at 661. "Merely providing the employee with information that his access to classified information is being suspended, without more, does not provide the employee with sufficient information to make an informed reply to the agency before being suspended." *Cheney v. Dep't of Justice*, 479 F.3d 1343, 1352 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

## II. The MSPB Did Not Err in Concluding that Mr. Lucena Was Given Sufficient Notice Under § 7513

The MSPB concluded that through the Notice, the DOJ had informed Mr. Lucena of the "very specific allegations" against him, in keeping with the agency's obligation "to provide information about when [the] alleged misconduct took place and what it involved with detail sufficient to

allow a meaningful response." P.A. 12 (internal quotation marks, alterations, and footnote omitted). Mr. Lucena argues that the DOJ failed to afford him the required "protections" under 5 U.S.C. § 7513(b), because it "failed to provide sufficient reasons . . . for his [security] clearance suspension" and, therefore, his indefinite suspension. Pet'r's Br. 21 (emphasis omitted). We disagree with Mr. Lucena.[4]

The MSPB did not err in concluding that Mr. Lucena was given sufficient notice of his proposed indefinite suspension in accordance with 5 U.S.C. § 7513(b). Mr. Lucena received the Notice of his proposed indefinite suspension in April 2016. P.A. 31. The Notice expressly provided that Mr. Lucena's proposed indefinite suspension was a result of the suspension of his security clearance. P.A. 31 ("Based on the March 28, 2016, decision . . . to suspend [Mr. Lucena's] access to [NSI], [the DAA] propose[d] to indefinitely suspend [Mr. Lucena] without pay . . . until a final decision regarding the revocation of [his] access to NSI and any resulting administrative action is effected."). The Notice explained, with specificity, why Mr. Lucena's security clearance had been suspended. P.A. 31 (explaining that Mr. Lucena's "access to NSI was suspended based on information obtained . . . during a preliminary review" of his OPR investigative file), 31–32 (providing the three "matters . . . identified" in his OPR investigative file). This is sufficient. *See King*, 75 F.3d at 662 (explaining § 7513(b)

---

[4]    The MSPB also concluded that the DOJ had established that Mr. Lucena held "a position that required a security clearance[,]" P.A. 6, that Mr. Lucena's "security clearance was suspended[,]" *id.*, and that there are "no positions [within the DEA] that do not require a security clearance[,]" P.A. 14. Mr. Lucena does not contest these findings. *See generally* Pet'r's Br.

"entitles [the] employee to notice of the reasons for the sus-
pension of his [or her] access to classified information when
that is the reason for placing the employee on [indefinite
suspension]"). Mr. Lucena was provided with such "detail"
as to "make an informed reply." *Brook*, 999 F.2d at 526; *see*
P.A. 51–53 (Written Response) (showing Mr. Lucena's clear
understanding of the specific allegations against him).[5]

Mr. Lucena's primary counterarguments are unper-
suasive. First, Mr. Lucena argues that the Notice "did not
afford [him] . . . sufficient reasons . . . for his clearance

---

[5]  Mr. Lucena also argues that the DOJ "vio-
lat[ed] . . . 5 U.S.C. § 7513(e)" by failing to provide Mr. Lu-
cena with "copies of [the Internal] [M]emo[randum][.]"
Pet'r's Br. 30. This argument is without merit. Section
7513(e) does not require that the DOJ provide Mr. Lucena
with copies of the Internal Memorandum; it requires that
the DOJ "maintain[]" "[c]opies of" various case documents,
including "any supporting material," and "furnish[]" these
documents to the "employee affected upon the employee's
request." 5 U.S.C. § 7513(e); *see* 5 C.F.R. § 752.404 (noting
an employee's "right to review the material which is relied
on to support the reasons for action given in the notice").
Further, Mr. Lucena fails to establish harmful error, as he
was given access to the Internal Memorandum, P.A. 49
(providing that, Mr. Lucena had "reviewed the evidence file
supporting" the Notice, which contained: the External
Memorandum, the Internal Memorandum, and the Notice),
and was provided with a copy of substantively the same in-
formation through the Notice, *compare* P.A. 28–29 (Inter-
nal Memorandum), *with* P.A. 31–33 (Notice). *See Ward v.
U.S. Postal Serv.*, 634 F.3d 1274, 1281 (Fed. Cir. 2011) ("We
have repeatedly held employees to this burden to show
harmful error in an agency's procedure in order to establish
reversible procedural error.").

suspension[,]" likening his situation to that in *Cheney*. Pet'r's Br. 21 (citing *Cheney*, 479 F.3d at 1352–53). Mr. Lucena's reliance on *Cheney* is inapt. In *Cheney*, we concluded that the DEA had not met the procedural requirements of § 7513(b) because it had provided the impacted employee with only "broad and unspecific allegations" without any "indication of when his alleged conduct took place or what it involved[,]" leaving him unable to make "a meaningful response." 479 F.3d at 1352. There, the DEA had not provided "any specific information regarding the time frame" of the alleged conduct or the specific nature of the conduct. *Id.* That is not the case here. The Notice provided specific times and specific allegations of misconduct. P.A. 31–33. Mr. Lucena was not left to "guess at the reason" for his proposed suspension. *Id.* at 1353 (internal quotation marks omitted).

Second, Mr. Lucena contends that the Notice was insufficient because it "omitted material facts that [Mr. Lucena's] counsel relied on in drafting a reply." Pet'r's Br. 26. This argument is without merit. The Notice was not required to "include explicitly every element of every charge underlying the proposed action." *Brook*, 999 F.2d at 526–27. Accordingly, the MSPB did not err in concluding that the DOJ gave Mr. Lucena sufficient notice under 5 U.S.C. § 7513(b) of his proposed indefinite suspension.[6]

---

[6]    Mr. Lucena also argues that "the length of [his] suspension was beyond the bounds of reasonableness and contrary to the [DEA's] procedures and policies." Pet'r's Br. 20 (capitalization altered). However, Mr. Lucena relies on a mischaracterization of the record to support his argument that the length of his suspension was unreasonable. *Compare id.* (asserting that the DCI testified that "he could not recall any other employee being suspended for the same length of time as [Mr. Lucena]" (citing P.A. 61–65)), *with*

CONCLUSION

We have considered Mr. Lucena's remaining arguments and find them unpersuasive.[7]  Accordingly, the Final Decision of the Merit Systems Protection Board is

---

P.A. 61–62 (Q:  "Now you testified earlier there is no rule regarding length of time. . . .  What was the average . . . ?" A:  "I'm not prepared to provide an answer to that question. . . .  [I]t's critical to point out the fact that each one of these matters is separate and unique unto itself.  And as a result, the length of time for which the indefinite suspension is in effect will be driven by the underlying matters which require investigation[.]").  Moreover, Mr. Lucena fails to identify any procedure or policy purportedly violated.  *See* Pet'r's Br. 20–21.

[7]    Mr. Lucena argues that the DOJ "failed to maintain an effective security program," thereby "causing prejudice to [Mr. Lucena]."  Pet'r's Br. 31–32 (capitalization altered). Mr. Lucena, however, does not challenge the MSPB's determination that it lacked jurisdiction to consider this argument, nor does he identify any basis for us to review this argument.  *Id.*; *see* P.A. 9 ("[T]his argument seeks a ruling on matters far beyond the [MSPB's] authority." (footnote omitted)).  The MSPB "does not have authority to review the substance of [a] security[-]clearance determination"; neither do we.  *Kaplan*, 733 F.3d at 1151; *see Egan*, 484 U.S. at 527–30.  Further, Mr. Lucena's argument relies on a mischaracterization of the record.  *Compare* Pet'r's Br. 32 (stating that the DCI "admitted that he had no written program in place when he suspended [Mr. Lucena's] access to [NSI]" (citing P.A. 65–66)), *with* P.A. 65 (Q:  "So there was no written policy that governed suspension of access during the time [Mr. Lucena] was suspended?"  A: "That is not correct."), 66 (Q:  "What were you alluding to or referencing when you said there were procedures or policies . . . ?"

**AFFIRMED**

COSTS

Each party shall bear its own costs.

---

A: "[I was] [r]eferring to [an] executive order and [subsequent] documents . . . , which govern the adjudication decision-making process.").