# United States Court of Appeals for the Federal Circuit

---

**JOSEPH T. GARGIULO,**
*Petitioner,*

v.

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent.*

---

2012-3157

---

Petition for review of the Merit Systems Protection Board in No. SF0752090370-I-1.

---

Decided: August 16, 2013

---

LAWRENCE BERGER, Mahon & Berger, of Glen Cove, New York, New York, argued for petitioner.

ALLISON KIDD-MILLER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, TODD M. HUGHES, Deputy Director. Of counsel on the brief was STEVEN E. COLON, TSA Office of Chief Counsel, United States Department of Homeland Security, Arlington, Virginia.

KATHERINE M. SMITH, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for intervenor. With her on the brief was BRYAN G. POLISUK, General Counsel.

───────────

Before LOURIE, BRYSON, and TARANTO, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Joseph T. Gargiulo appeals from a decision of the Merit Systems Protection Board affirming his indefinite suspension from the Transportation Security Administration ("TSA"), an agency within the Department of Homeland Security. Mr. Gargiulo had served as a TSA Federal Air Marshal, a position requiring a top secret security clearance. The revocation of that security clearance, and Mr. Gargiulo's resulting indefinite suspension from his position, stemmed from misconduct that he allegedly committed in his previous positions as a local police officer and deputy sheriff.[1]

I

On August 1, 2008, the TSA sent Mr. Gargiulo a notice that the Department's Office of Security, Personnel Security Division, had suspended his security clearance with the intent to revoke his access to classified information. The notice described the alleged improper conduct that was the basis for the suspension and proposed revocation, and it gave Mr. Gargiulo 30 days from receipt of the letter to respond. That letter was apparently sent

───────────

[1] The Department had twice previously suspended Mr. Gargiulo after suspending his security clearance based on his prior conduct. The Department withdrew the first suspension following Mr. Gargiulo's appeal to the Board, and a Board administrative judge reversed the second based on the agency's internal regulations.

to the wrong address. Accordingly, the TSA sent a second notice to Mr. Gargiulo on November 13, which advised him of the suspension and proposed revocation of his security clearance, and gave him another 30 days to respond. In response to that notice, Mr. Gargiulo requested materials from the agency regarding the alleged misconduct to assist him in contesting the security clearance determination.

In the meantime, the TSA advised Mr. Gargiulo on August 28, 2008, that it proposed to suspend him indefinitely from his Federal Air Marshal position for failure to maintain the required security clearance. The August 28 notice attached the August 1 letter advising him of his security clearance suspension. Mr. Gargiulo answered the proposed indefinite suspension from duty through a letter from counsel; he waived his right to an oral response. On February 10, 2009, the TSA suspended him from his position without pay.

The security clearance determination proceeded while Mr. Gargiulo was indefinitely suspended from his position. On May 23, 2009, the agency provided Mr. Gargiulo with documentary materials relating to the security clearance suspension, and on June 24, Mr. Gargiulo provided an oral response. The agency revoked his security clearance on November 25, 2009.

Mr. Gargiulo appealed his suspension to the Board. He argued that both constitutional due process and the applicable agency regulations guaranteed him an opportunity to meaningfully respond to the decision to suspend his security clearance before the TSA indefinitely suspended him from his position. But Mr. Gargiulo did not dispute that his security clearance had been suspended, that a security clearance was a requirement of his position, and that TSA internal regulations permitted the agency to suspend him from duty indefinitely for failure to maintain the required security clearance.

The administrative judge who heard Mr. Gargiulo's case upheld his indefinite suspension. To the extent Mr. Gargiulo was arguing that the agency was required to afford him procedural due process in connection with the suspension and the proposed revocation of his security clearance, the administrative judge noted that "it is well-settled and has been often repeated that an employee has no constitutional right to due process in connection with the security clearance process." As to Mr. Gargiulo's claims based on the applicable statutory and regulatory provisions, the administrative judge held that Mr. Gargiulo was entitled to a sufficient explanation of the basis for the suspension of his security clearance to enable him to make an informed reply to the proposal to suspend him from his position. However, the administrative judge rejected Mr. Gargiulo's contention that he was entitled to respond to the reasons for the security clearance suspension before the initiation of any adverse action based on the loss of his security clearance. Moreover, the administrative judge found that the notice of proposed indefinite suspension and the notice of the security clearance suspension provided sufficient details as to the reasons for the security clearance suspension to satisfy the agency's responsibilities under its regulations.

The full Board upheld the administrative judge's decision, but on different grounds.[2] Citing the Supreme Court's decisions in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Gilbert v. Homar*, 520 U.S. 924 (1997), the Board held that Mr. Gargiulo "was entitled to constitutional due process, i.e., notice and a meaningful opportunity to respond, upon being indefinitely suspended

---

[2]    The Board relied in part on its decision in another case, which had been consolidated with Mr. Gargiulo's appeal, *McGriff v. Dep't of the Navy*, 118 M.S.P.R. 89 (2012). The Board remanded that case for further proceedings, and it is not before this court.

based on the agency's security clearance decision." *Gargiulo v. Dep't of Homeland Sec.*, 118 M.S.P.R. 137, 143 (2012). The Board then applied the three-part test from *Mathews* to determine whether Mr. Gargiulo had been denied due process in the proceedings leading up to his suspension. The Board considered (1) the private interest affected, in this case Mr. Gargiulo's interest in continued employment; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest.

In assessing the first factor, the Board assumed that the nine-month delay between Mr. Gargiulo's suspension without pay and the final revocation of his security clearance resulted in a "significant deprivation" of a property interest. *Id*. With regard to the third factor, the Board recognized that "the agency undoubtedly has a compelling interest in withholding national security information from unauthorized persons." *Id*. at 144. As to the second factor, the Board found that "the totality of the evidence," including the November 2009 final revocation of Mr. Gargiulo's security clearance, showed that "the agency did have reasonable grounds to support the appellant's suspension sufficient to avoid the risk that the appellant's property interest had been erroneously compromised as a result of the procedures used." *Id*. at 145.

The Board further held that the TSA had lawfully suspended Mr. Gargiulo pending the final decision revoking his security clearance and that he was not denied due process as a result of his not having received the August 1, 2008, notification of the decision to suspend his security clearance. The Board observed that a copy of the August 1 communication was attached to the August 28 notification of the proposal to suspend Mr. Gargiulo from his position, which he did receive. Those documents, the Board held, "gave the appellant enough information to enable him to respond meaningfully to the agency's proposed suspension." *Id*. at 145–46. Because the agency had given Mr. Gargiulo "a meaningful opportunity to respond to someone with authority to change the outcome

of the security clearance determination in either the security clearance proceeding or in the adverse action proceeding" prior to his suspension in February 2009, the Board concluded that the TSA had not violated Mr. Gargiulo's due process rights. *Id.* at 147.

## II

Mr. Gargiulo bases his appeal to this court entirely on the Due Process Clause of the Fifth Amendment to the Constitution. In particular, he argues that the agency deprived him of constitutional due process by not timely providing him with documentary materials that the agency had relied upon in deciding to suspend his security clearance. He complains that although he was given notice of the reasons for the suspension of his security clearance as early as August 2008, he was not provided with copies of the documentary materials the agency relied on in making that decision until May 2009, three months after he was suspended from his position. The delay in producing those materials, he contends, meant that he was denied a meaningful opportunity to contest his suspension, either before or promptly after it became effective in February 2009.

## A

The Supreme Court in *Department of the Navy v. Egan*, 484 U.S. 518, 528 (1988), held that that "no one has a 'right' to a security clearance," which "requires an affirmative act of discretion on the part of the granting official." Based on *Egan*, our cases have consistently held that employees do "not have a liberty or property interest in access to classified information, and the termination of that access therefore [does] not implicate any due process concerns." *Jones v. Dep't of the Navy*, 978 F.2d 1223, 1225 (Fed. Cir. 1992); *see Hesse v. Dep't of State*, 217 F.3d 1372, 1381 (Fed. Cir. 2000) ("[T]he Due Process Clause of the Fifth Amendment has no application to a proceeding to review an employee's security clearance."). Thus, Executive Branch security clearance decisions "are not reviewa-

ble for 'minimum due process protection.'" *Robinson v. Dep't of Homeland Sec.*, 498 F.3d 1361, 1364 (Fed. Cir. 2007).

Mr. Gargiulo argues that the property interest he enjoys in his employment gives him a constitutional right to procedures enabling him to challenge the suspension of his security clearance that was the basis for his indefinite suspension from his Federal Air Marshal position. This court has repeatedly held, however, that the Board's review of an adverse action resulting from the suspension of a security clearance is limited to "whether a security clearance was denied, whether the security clearance was a requirement of the appellant's position, and whether the procedures set forth in section 7513 were followed." *Hesse*, 217 F.3d at 1376; s*ee Cheney v. Dep't of Justice*, 479 F.3d 1343, 1352 (Fed. Cir. 2007) (noting, in the context of a pending security clearance determination, that the steps in *Hesse* are "[a]ll the Board and this court may do"); *Lyles v. Dep't of the Army*, 864 F.2d 1581, 1583 (Fed. Cir. 1989) ("After determining that [Section 7513] procedures were followed, the only other inquiry the Board may make is whether the employee's position was classified as sensitive and whether he was discharged for failure to maintain the required security clearance.").[3]

---

[3] Because Mr. Gargiulo raises only a constitutional due process claim before this court, we need not consider whether the agency followed procedures required by statute or regulation. As a general matter, 5 U.S.C. § 7513(b) provides employees facing an adverse action with (1) "at least 30 days' advance written notice"; (2) "a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer"; (3) a right to representation; and (4) "a written decision and the specific reasons therefor at the earliest practicable date." The administrative judge noted that TSA employees such as

Mr. Gargiulo's complaint that he was denied a meaningful opportunity to respond to the agency's decision to suspend his security clearance therefore misses the mark. Because Mr. Gargiulo had no due process rights with respect to the procedures used to determine whether to suspend or revoke his security clearance, he had no constitutional right to receive the documentary evidence underlying the security clearance suspension before his indefinite suspension from employment took effect. He had due process rights with respect to his indefinite suspension, but they did not include the right to contest the merits of the decision to suspend his security clearance. *See Cheney*, 479 F.3d at 1352 ("Neither the Board nor this court may review the underlying merits of an agency's decision to suspend a security clearance."); *Drumheller v. Dep't of the Army*, 49 F.3d 1566, 1571 (Fed. Cir. 1995).[4]

---

Mr. Gargiulo are subject to the Federal Aviation Administration's personnel management system, and not the statutory protections of 5 U.S.C. § 7513(b). *See* 49 U.S.C. §§ 114, 40122. As the administrative judge explained, the agency's personnel policies offer procedural safeguards similar to those provided by section 7513. The administrative judge ruled that the agency's procedures did not violate its personnel rules, and Mr. Gargiulo has not contested that finding on appeal.

[4] Because Mr. Gargiulo's complaint is limited to what he considers an untimely opportunity to challenge the suspension and proposed revocation of his security clearance, we need not address what process would be required if he were claiming entitlement to other relief, such as assignment to a non-sensitive position within his agency.

## B

In this case and in the companion *McGriff* case, the Board held that although it may not review the merits of an agency's decision to suspend an employee's access to classified material, it can review (1) whether the agency provided the employee with the procedural protections set forth in 5 U.S.C. § 7513(b) in taking an adverse action and (2) whether the agency afforded the employee constitutionally guaranteed due process with respect to that action. After balancing what it perceived to be the competing interests in this case, the Board concluded that while Mr. Gargiulo's suspension for nine months pending the final decision revoking his security clearance may have represented a significant deprivation of his property interest in his job, that interest was outweighed by competing factors: the agency's compelling interest in withholding national security information from unauthorized persons, and the reasonable grounds that the agency had for denying a security clearance to Mr. Gargiulo.

This court has held that 5 U.S.C. § 7513(b) "entitles an employee to notice of the reasons for the suspension of his access to classified information when that is the reason for placing the employee on enforced leave pending a decision on the employee's security clearance." *King v. Alston*, 75 F.3d 657, 661 (Fed. Cir. 1996). The statutory notice "provides the employee with an adequate opportunity to make a meaningful reply to the agency before being placed on enforced leave." *Id.* at 662; *see also Cheney*, 479 F.3d at 1352. That right, however, is statutory, not constitutional. The Board's characterization of that right as a constitutional guarantee that the Board may delineate and enforce is contrary to this court's decisions in *Hesse*, *Robinson*, and *Jones*, in which we held that employees do not have constitutional due process rights in connection with security clearance determinations. As this court observed in *Hesse*, all the Board and this court may do in the context of an adverse action stemming from a security clearance suspension is to

"determine whether a security clearance was denied, whether the security clearance was a requirement of the appellant's position, and whether the procedures set forth in section 7513 were followed." 217 F.3d at 1376.

In applying its due process analysis, the Board went further than that. It held, as a matter of constitutional due process, that Mr. Gargiulo was entitled to notice of the reasons for the suspension of his security clearance and an opportunity to make a meaningful response regarding those reasons to someone in the agency with the authority to affect that decision. While this court's cases hold that section 7513 grants those rights to certain employees, we have not held that those rights are guaranteed by the Fifth Amendment.

In addition, the Board cited the "need to ensure that the procedures used provide adequate assurance that the agency had reasonable grounds to support the adverse action." And in this case it concluded, based on "the totality of the evidence," that "the agency did have reasonable grounds to support the suspension," and that the decision to revoke Mr. Gargiulo's security clearance was "not baseless or unwarranted." 118 M.S.P.R. at 144. While the Board disclaimed any intention to review the merits of the security clearance suspension, the sole ground for the decision to suspend Mr. Gargiulo from his position was the suspension of his security clearance. The Board's conclusion that there were reasonable grounds to support the adverse action therefore necessarily reflected its view that the agency's security clearance decision was reasonable, based on what the Board referred to as "the totality of the evidence." In addressing the merits of the security clearance determination in that manner, the Board exceeded its authority in adverse decision cases that are based on the suspension or revocation of an employee's security clearance.

Accordingly, we affirm the Board's decision upholding Mr. Gargiulo's indefinite suspension. However, we agree with the Department of Homeland Security that the

Board erred by holding that due process provides an employee with procedural rights in connection with a security clearance determination and justifies an inquiry into whether the agency had reasonable grounds for suspending or revoking the employee's security clearance.

**AFFIRMED**