**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 45**

Docket No. DA-0752-09-0404-B-1

**Alexander Buelna,**

**Appellant,**

**v.**

**Department of Homeland Security,**

**Agency.**

June 19, 2014

Jeffrey H. Jacobson, Esquire, Tucson, Arizona, and Lawrence Berger, Esquire, Glen Cove, New York, for the appellant.

Daniela Murch, Michael W. Gaches, Esquire, and Steven E. Colon, Esquire, Arlington, Virginia, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member
Vice Chairman Wagner issues a separate, concurring opinion.

## OPINION AND ORDER

¶1     The appellant has petitioned for review of the initial decision on remand that affirmed his indefinite suspension. For the reasons set forth below, we AFFIRM the initial decision as MODIFIED by this Opinion and Order. The agency's action is SUSTAINED.

## BACKGROUND

¶2     The appellant was formerly employed as a Federal Air Marshal (FAM) with the Transportation Security Administration (TSA). Initial Appeal File (IAF),

Tab 8. As a condition of employment, a FAM is required to obtain and maintain a Top Secret security clearance. *Id.* By memorandum dated February 20, 2009, the agency's Personnel Security Division (PSD) notified the appellant that his Top Secret security clearance was suspended, effective immediately, pending an internal agency review. IAF, Tab 6, Subtab 4I. The memorandum indicated that the clearance suspension was based on derogatory information developed from the U.S. Army and the agency's Office of Inspector General (OIG) concerning alleged fraudulent claims, which raised questions about his honesty, integrity, trustworthiness, and ability to protect national security information. *Id.* The appellant was not provided an opportunity to contest the suspension of his security clearance. *See id.*

¶3    By notice dated March 3, 2009, the agency proposed to indefinitely suspend the appellant without pay based on two charges: (1) the suspension of his Top Secret security clearance; and (2) the pending OIG investigation into the same alleged misconduct underlying the clearance suspension. IAF, Tab 6, Subtab 4G. The appellant responded orally and in writing to the deciding official. *Id.*, Subtabs 4B, 4E. In his oral reply, the appellant requested that he remain in administrative leave status pending final resolution of the security clearance matter. *See id.*, Subtab 4B.

¶4    By letter dated April 2, 2009, the deciding official notified the appellant that he was suspended without pay, effective that date, and that the suspension would remain in effect until the completion of the investigation and/or resolution of the appellant's security clearance status. *Id.*, Subtab 4B. In the decision letter, the deciding official stated that any review of the decision to suspend the appellant's security clearance "rests exclusively with [PSD]," and that the "process to appeal [PSD's] decision is separate and distinct from the process to reply to the proposal to suspend you indefinitely." *Id.* The parties have stipulated that the appellant's indefinite suspension was based on the suspension of his security clearance and the investigation into his alleged misconduct, not on

the underlying merits or factual predicate for the suspension or the investigation. IAF, Tab 8.

¶5        On appeal to the Board, the appellant argued that the agency denied him due process[1] by failing to provide a meaningful opportunity to contest the merits of the security clearance suspension before placing him in nonpay status.  IAF, Tabs 1, 11.  In his initial decision, the administrative judge noted that the action on appeal is governed by TSA Management Directive (MD) 1100.75-3,[2] which authorizes the agency to impose an indefinite suspension where an employee's security clearance has been suspended, denied, or revoked, and a security clearance is a condition of employment or is otherwise required for the employee's position.  IAF, Tab 16 at 2; *see* MD 1100.75-3 Handbook (2009), § J(1)(d).  The administrative judge then sustained the action, finding that the appellant's position required a clearance, that his clearance was suspended, that the agency had complied with the procedures set forth in MD 1100.75-3, and that the suspension had a condition subsequent that would bring the action to an end. IAF, Tab 16 at 47.  The administrative judge did not address the agency's second charge or the appellant's claim that he was denied due process under the Fifth Amendment.

¶6        The appellant filed a petition for review, in which he reiterated his due process claim.  Petition for Review (PFR) File (I-1), Tab 1.  Citing its decision in

[1] For purposes of this decision, the term "due process" refers exclusively to the procedural due process guaranteed under the Fifth Amendment.

[2] The provisions of MD 1100.75-3 and the accompanying Handbook, rather than chapter 75, govern disciplinary actions against TSA employees. *Winlock v. Department of Homeland Security*, 110 M.S.P.R. 521, ¶ 6 (2009), *aff'd*, 370 F. App'x 119 (Fed. Cir. 2010); *see* 49 U.S.C. §§ 114(n), 40122(g)(2).  MD 1100.75-3 and the 2009 edition of the Handbook are located in the record at IAF, Tab 6, Subtabs 4J and 4K, respectively. The Handbook was revised in 2013, but with no substantive changes pertinent to this appeal.

*McGriff v. Department of the Navy*, 118 M.S.P.R. 89 (2012), issued that same day, the full Board held that the appellant was entitled to due process concerning his indefinite suspension, and that the Board had authority to review whether due process was provided. *Buelna v. Department of Homeland Security*, 118 M.S.P.R. 115, ¶¶ 10-12 (2012) (citing *McGriff*, 118 M.S.P.R. 89, ¶¶ 24-25). Again citing *McGriff*, the Board further held that in determining the requirements of due process, it would apply the balancing test employed in *Gilbert v. Homar*, 520 U.S. 924 (1997), and consider the following factors: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest. *Buelna*, 118 M.S.P.R. 115, ¶ 11 (citing *McGriff*, 118 M.S.P.R. 89, ¶¶ 27-28); *see Homar*, 520 U.S. at 931-32 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).[3]

¶7          In analyzing the "*Homar* factors"—more accurately, the *Mathews* factors—the Board determined that, under the circumstances presented in this case, the first and third factors were not dispositive, and that there were unresolved factual issues relating to the second. *Buelna*, 118 M.S.P.R. 115, ¶¶ 12-16. The Board found that although the agency had reasonable grounds to support its action and provided the appellant with the specific reasons for the security clearance suspension, *id.*, ¶¶ 14-15, the evidence did not indicate that the deciding official had the authority to consider the merits of the clearance suspension, and also may have lacked authority to take other remedial action, such as temporarily reassigning the appellant to a position that did not require a security clearance, *id.*, ¶ 17. Thus, the Board concluded, "a question exists regarding whether the agency afforded the appellant a meaningful opportunity to reply to the reason for the suspension of his security clearance before suspending him from his position,

---

[3] *See infra*, note 7.

or whether instead the agency merely provided him with an empty formality." *Id*., ¶ 18. The Board further noted that even if the agency did provide due process, the appellant could still argue that the agency committed harmful error by violating its own regulations governing adverse actions. *Id*., ¶ 19. Accordingly, the Board remanded for further development of the record on both the due process and harmful error issues.

¶8      After considering the parties' additional written submissions, the administrative judge again sustained the indefinite suspension. Remand Appeal File (RAF), Tab 14. The administrative judge found that although the deciding official had no authority to change the decision to suspend the appellant's security clearance, he had the authority to choose an alternative to the proposed suspension, such as continued placement on administrative leave. Hence, the administrative judge concluded, the appellant received a meaningful opportunity to respond to the proposed indefinite suspension, and was thereby provided due process. *Id*. at 3-6. Regarding the appellant's harmful error claim, the administrative judge again found that the agency provided the procedures required under MD 1100.75-3, and that even if the agency had failed to do so, the appellant failed to show how it would have reached a different decision in the absence of the error. *Id*. at 6-7.

¶9      The appellant subsequently filed a petition for review of the remand initial decision. PFR File (B-1), Tab 3. The agency filed a response in opposition. PFR File (B-1), Tab 6. Following the issuance of the U.S. Court of Appeals for the Federal Circuit's decision in *Gargiulo v. Department of Homeland Security*, 727 F.3d 1181 (Fed. Cir. 2013), the Board invited the parties to address the possible application of *Gargiulo* to the appellant's due process claim. PFR File (B-1), Tab 12. Both parties responded. PFR File (B-1), Tabs 14, 17.

ANALYSIS

The only issues remaining to be adjudicated are whether the agency violated the appellant's due process rights or committed harmful error in indefinitely suspending him based on the suspension of his security clearance.

¶10        During the initial proceedings prior to remand, the administrative judge issued a summary of the telephonic close of record conference, in which he stated that the parties were precluded from arguing any but the following issues, whether: (1) the appellant's position requires a security clearance; (2) the appellant "lost" his security clearance; (3) the appellant "was granted minimum due process rights under the agency's internal regulations"; and (4) the indefinite suspension had a condition subsequent that would bring the action to an end. IAF, Tab 14.   The administrative judge further informed the parties that any objections to the summary must be submitted in writing.   *Id*.   Neither party objected to the summary.

¶11        As to issues (1) and (2), the parties have stipulated that the appellant's position required a security clearance and that his clearance was suspended.  IAF, Tab 8.  The agency's first charge is therefore sustained.  *See* 5 C.F.R. § 1201.63. However, because the exhaustive list of issues to be adjudicated did not include the merits of the agency's second charge, i.e., the continuing OIG investigation, and the parties did not object to the summary, we conclude that the agency does not intend to rely on that charge, and must establish that its action was warranted based on the first charge alone.[4]  In that regard, the administrative judge correctly noted that an indefinite suspension based on the suspension of a required security clearance promotes the efficiency of the service, *see Jones v. Department of the Navy*, 978 F.2d 1223, 1226-27 (Fed. Cir. 1992), and also is expressly authorized

---

[4] Because the merits of the second charge are not before us, we do not decide whether the holding of *Gonzalez v. Department of Homeland Security*, 114 M.S.P.R. 318, ¶¶ 23-25 (2010), applies to indefinite suspensions taken under the TSA personnel system.

under the TSA personnel system, *see* MD 1100.75-3 Handbook (2009), § J(1)(d). As to issue (4), the appellant has not contested the administrative judge's finding that the indefinite suspension had a condition subsequent that would bring it to an end, and we discern no error in his finding.

¶12    The outcome of this case therefore turns on the appellant's claims that the agency violated his due process rights and/or committed harmful error in indefinitely suspending him.    It appears that in framing issue (3), the administrative judge initially conflated the question of whether the agency denied the appellant due process with the question of whether it committed harmful error.    The appellant raised both issues, however, and we identified both for consideration on remand.    *Buelna*, 118 M.S.P.R. 115, ¶ 20.    No other issues remain to be adjudicated.

The appellant was entitled to due process concerning the indefinite suspension.

¶13    While it is well established that no one has a right to a security clearance or access to classified information, a tenured federal employee nonetheless has a property interest in continued employment.    *King v. Alston*, 75 F.3d 657, 661 (Fed. Cir. 1996).    Typically, this is so because the statutory federal employment scheme provides that the agency may take an adverse action against the employee only for unacceptable performance, pursuant to 5 U.S.C. § 4303, or for such cause as will promote the efficiency of the service, pursuant to 5 U.S.C. § 7513. *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1375 (Fed. Cir. 1999).    In this case, the adverse action on appeal is governed not by statute, but rather by the TSA's personnel management system, in particular, the provisions of MD 1100.75-3 and the accompanying Handbook.    *Buelna*, 118 M.S.P.R. 115, ¶ 8.    However, MD 1100.75-3 similarly provides that a tenured TSA employee may only be suspended, removed, or demoted for unacceptable performance or for such cause as will promote the efficiency of the service.    *Id*., ¶ 9; IAF, Tab 6, Subtab 4J, § 6(E).    Accordingly, we reaffirm that the appellant's indefinite suspension deprived him of a property interest cognizable under the Fifth

Amendment, and that the agency was required to provide him due process in connection with that action. *Buelna*, 118 M.S.P.R. 115, ¶ 12; *see Gargiulo*, 727 F.3d at 1185 (acknowledging that the petitioner, a FAM who was indefinitely suspended under the TSA personnel management system based on the suspension of his security clearance, had due process rights regarding his indefinite suspension); *Kriner v. Department of the Navy*, 61 M.S.P.R. 526, 532 (1994) ("It was the agency's deprivation of the appellant's property interest in his employment—his suspension from his job—which triggered the application of due process.").

The Board has authority to review whether the agency provided the appellant due process in indefinitely suspending him.

¶14        In *Department of the Navy v. Egan*, 484 U.S. 518, 530-31 (1988), the Supreme Court held that in an appeal of an adverse action under chapter 75 based on the denial or revocation of a required security clearance, the Board may not review the merits of the underlying clearance determination, but may review, inter alia, whether the position required a security clearance, whether the clearance was denied or revoked, and whether the agency complied with the procedural requirements of § 7513.[5] The holding of *Egan* has since been applied to indefinite suspensions based on the suspension of a security clearance. *See, e.g.*, *Cheney v. Department of Justice*, 479 F.3d 1343, 1351-52 (2007). *Egan* also controls where, as here, the adverse action is taken under the TSA personnel system. *See Gargiulo*, 727 F.3d at 1186. In such cases, the procedural requirements of section 7513 are not directly applicable; however, the Board has authority under 5 U.S.C. § 7701(c)(2)(A) to review the agency's compliance with

---

[5] The Court further stated that in such cases the Board may review "whether transfer to a nonsensitive position was feasible." *Id.* However, the Federal Circuit has since clarified that such review is appropriate only where a statute or regulation provides the employee a substantive right to such reassignment. *Griffin v. Defense Mapping Agency*, 864 F.2d 1579, 1580 (Fed. Cir. 1989).

its own procedures, which include the similar provisions of MD 1100.75-3.  *See Romero v. Department of Defense*, 527 F.3d 1324, 1328-29 (Fed. Cir. 2008).

¶15      The Court did not have occasion in *Egan* to decide if the Board was authorized to consider a claim that an agency denied due process in taking an adverse action based on a security clearance determination.  We have long held, however, that the Board is authorized to review such claims.  *See, e.g.*, *McGriff*, 118 M.S.P.R. 89, ¶ 25; *Kriner*, 61 M.S.P.R. at 532-33.  The Federal Circuit also has implicitly recognized that due process claims are reviewable in this context.  *See Hesse v. Department of State*, 217 F.3d 1372, 1381-82 (Fed. Cir. 2000) (finding that the agency did not deny the petitioner due process regarding an indefinite suspension based on the suspension of a security clearance).  This result is not contrary to *Egan*, because review of the due process protections afforded does not require the Board to second guess security determinations committed to agency discretion.  *Weissberger v. U.S. Information Agency*, 39 M.S.P.R. 370, 374 (1988).[6]  We therefore reaffirm our authority to determine whether an agency afforded an appellant due process in taking an adverse action based on a security clearance determination.  For the reasons discussed below, however, we must reconsider the question of what due process requires in such a case.

---

[6] Indeed, we need not consider any factual issues that are not also involved in determining an agency's compliance with the procedures set forth at 5 U.S.C. § 7513, a matter which lies squarely within our review authority under *Egan*.  Whether an agency provided due process is in certain respects a distinct inquiry, in that the requirements of constitutional due process are not conditioned on statutory procedures, and furthermore are not subject to the harmful error test.  *Stone*, 179 F.3d at 1375, 1377.  Nonetheless, section 7513 has been drafted so that its procedural protections include, inter alia, the due process rights independently guaranteed under the U.S. Constitution, such as notice and a meaningful opportunity to respond to the proposed action.  *Chavies v. Department of the Navy*, 104 M.S.P.R. 81, ¶ 10 (2006).  The same is true of the similar provisions of MD 1100.75-3.  *See Buelna*, 118 M.S.P.R. 115, ¶ 9.

<u>In determining the general requirements of due process concerning an indefinite suspension based on the suspension of a security clearance, the Board will apply the *Mathews* factors.</u>

¶16      Due process requires, at a minimum, that an employee being deprived of his property interest be given "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). However, due process "is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). As previously stated, to determine the specific dictates of due process, we consider: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest. *Id.* at 335.

¶17      These considerations are not limited in their application to indefinite suspension actions, such as the one at issue in *Homar*, but apply generally to the deprivation of any property interest. For example, in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), issued more than a decade before *Homar*, the Supreme Court relied on the *Mathews* factors in determining what process was due a public employee who, under state law, could be removed only for cause. *Id.* at 538-39, 542-45. After considering the factors in turn, the Court concluded that a tenured government employee is entitled to "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" prior to the deprivation of his property right to continued employment. *Id.* at 546-48. We have since applied the holding of *Loudermill* to removals of federal employees. *See, e.g.*, *Alford v. Department of Defense*, 118 M.S.P.R. 556, ¶¶ 2, 6 (2012).

¶18      We find occasion here to conduct a new *Mathews* factors analysis. We do so in part because, as the Court noted in *Homar*, it cannot be assumed that in all cases *Loudermill* will apply in full to the temporary deprivation of a suspension

without pay.  *See* 520 U.S. at 929-32.  More to the point, our recent analysis of the *Mathews* factors in *McGriff* and related decisions, including our previous decision in this case, requires clarification.[7]  As with *Loudermill* and its progeny, our conclusions here may be applied to similar appeals without reiterating the *Mathews* analysis in each case.

We may rely on *Loudermill* and its progeny in determining whether the appellant's predeprivation hearing was meaningful.

¶19        In considering the first *Mathews* factor, i.e., the private interest affected by the action, we must consider the length and finality of the deprivation.  *Homar*, 520 U.S. at 932.  Here, as in *Homar*, the appellant has suffered only a temporary suspension, rather than a permanent deprivation of his property interest in continued employment.  *See id.*  In drawing that distinction, the Court paid no particular attention to the precise duration of the suspension, *see id.*, and we need not do so here.  For purposes of the *Mathews* analysis, it is sufficient to observe that, while a suspension is a temporary deprivation, it is nonetheless "likely to cut off subsistence income and to prevent one from obtaining other gainful employment," and has "great practical impact" on the employee.  *Engdahl v. Department of the Navy*, 900 F.2d 1572, 1575 (Fed. Cir. 1990).

¶20        Regarding the third *Mathews* factor, the government has a compelling interest in withholding national security information from unauthorized persons. *Buelna*, 118 M.S.P.R. 115, ¶ 13 (citing *Egan*, 484 U.S. at 527).  It is true the

---

[7] To the extent our analysis below is inconsistent with *Hairston v. Department of Defense*, 119 M.S.P.R. 162 (2013); *Diehl v. Department of the Army*, 118 M.S.P.R. 344 (2012); *Gaitan v. Department of Homeland Security*, 118 M.S.P.R. 180 (2012); *Gargiulo v. Department of Homeland Security*, 118 M.S.P.R. 137 (2012), *aff'd on other grounds*, 727 F.3d 1181 (Fed. Cir. 2013); *Buelna*, 118 M.S.P.R. 115; and *McGriff*, 118 M.S.P.R. 89, these decisions are hereby modified.  To the extent our prior due process analysis of these appeals under *Gilbert v. Homar*, 520 U.S. 924 (1997), suggested that we engaged in a review of the merits of agency security clearance determinations, we hereby clarify that this was not our intent.

hazard may be temporarily avoided by keeping the employee in a paid non-duty status.  *See Loudermill*, 470 U.S. at 544-45.  However, the government's interest in the efficiency of the service is sufficiently strong to permit an indefinite suspension without pay pending completion of the security clearance adjudication.  *See Jones*, 978 F.2d at 1226.

¶21    In considering the second and decisive *Mathews* factor, our focus is on the need to ensure that the procedures used provide adequate assurance that the agency had reasonable grounds to support the adverse action.  *Buelna*, 118 M.S.P.R. 115, ¶ 14 (citing *Homar*, 520 U.S. at 933-34); *see Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972) (the purpose of the right to be heard is not only to provide "abstract fair play," but also "to minimize substantively unfair or mistaken deprivations of property").[8]  Because the appellant was afforded an opportunity to respond to the proposed action prior to being suspended, it is clear the hearing occurred at a "meaningful time" for these purposes, *see Mathews*, 424 U.S. at 333, and we need not decide whether a postdeprivation hearing might have satisfied the requirements of due process.  However, it remains to be determined whether the appellant was heard in a "meaningful manner" that provided sufficient protection against an erroneous deprivation of his property interest.  *Id*. at 333, 335.

¶22    When the Court in *Loudermill* considered the second *Mathews* factor, it explained that for the purpose of reaching an accurate decision, the opportunity to respond to a proposed removal is important for two reasons.  *Loudermill*, 470 U.S. at 542-46.  First, an adverse action will often involve factual disputes and consideration of the employee's response may clarify such disputes.  *Id*.; *Stone*, 179 F.3d at 1376.  Second, "[e]ven where the facts are clear, the

---

[8] Our inquiry here is limited to the procedures used in the adverse action proceedings, and does not extend to the merits of the underlying clearance suspension.  *See Gargiulo*, 727 F.2d at 1186-87.

appropriateness or necessity of the [penalty] may not be," and in such cases the employee must receive a "meaningful opportunity to invoke the discretion of the decision maker." *Loudermill*, 470 U.S. at 543. Thus, "the employee's response is essential not only to the issue of whether the allegations are true, but also with regard to whether the level of penalty to be imposed is appropriate." *Stone*, 179 F.3d at 1376. Although the appellant in this case was not removed, we find the same considerations described in *Loudermill* are present in determining whether he received an adequate opportunity to contest his proposed suspension. We address them in turn.

For purposes of responding to the charge, due process does not require an opportunity to contest the merits of the clearance suspension.

¶23    As to the facts underlying the agency's charge, it is well established that the suspension of a security clearance, pending a final decision on whether to revoke or restore it, may serve as a basis for imposing an indefinite suspension. *Jones*, 978 F.2d at 1226-27; *see also* MD 1100.75-3 Handbook (2009), § J(1)(d). This is so even where, as in *Jones*, the agency ultimately determines that the facts warrant restoration of the clearance. *See* 978 F.2d at 1224, 1227. Consequently, where an agency proposes to indefinitely suspend an employee based on the suspension of his security clearance, the only relevant factual disputes that could be raised regarding the charge are whether the position required a security clearance and whether the clearance was suspended. Indeed, the parties have stipulated that the appellant's indefinite suspension was based on the suspension of his clearance, not the merits or factual predicate of the clearance suspension. IAF, Tab 8.

¶24    The Board has previously held that in an indefinite suspension action based on the suspension of a security clearance, due process requires that the employee be provided an opportunity to contest the underlying security determination. *Gaitan*, 118 M.S.P.R. 180, ¶ 23 (due process requires only that the appellant receive a meaningful opportunity to respond to someone with authority to change

the outcome of the security clearance determination in either the security clearance proceeding or the adverse action proceeding); *Gargiulo*, 118 M.S.P.R. 137, ¶ 20 (same). That holding was incorrect because an employee has no property interest in a security clearance. *Gargiulo*, 727 F.3d at 1185. Failure to provide an opportunity to contest a clearance suspension prior to placement in a nonpay status may constitute harmful error, if such a procedure is required under an agency's own regulations concerning adverse actions based on personnel security determinations. *See Ulep v. Department of the Army*, 120 M.S.P.R. 579, ¶ 5 (2014). It does not, however, constitute a due process violation, because the merits of the agency's charge do not hinge on any factual disputes concerning the merits of the clearance suspension.[9]

For purposes of responding to the charge, constitutional due process does not require notice of the factual basis for the clearance suspension.

¶25 Constitutional due process does not necessarily require that the employee be notified of the factual basis underlying the security clearance suspension. *Gargiulo*, 727 F.3d at 1186; *contra Hinton v. Department of the Navy*, 61 M.S.P.R. 692, 695-96 (1994). Such notice is required under 5 U.S.C. § 7513, which provides that an employee facing an adverse action be notified of the specific reasons for the proposed action. *See Cheney*, 479 F.3d at 1352 (the employee must be given enough information to enable him to make a meaningful reply); *King*, 75 F.3d at 661-62; *see also* MD 1100.75-3 Handbook (2009),

---

[9] We further note that in cases where the employee does receive an opportunity to contest the clearance determination prior to the adverse action proceedings, that opportunity alone is insufficient to satisfy due process with respect to the proposed adverse action. *Contra Gaitan*, 118 M.S.P.R. 180, ¶ 23; *Gargiulo*, 118 M.S.P.R. 137, ¶ 20. Due process requires that the employee have the "opportunity to present reasons, either in person or in writing, why *proposed action* should not be taken." *Loudermill*, 470 U.S. at 546 (emphasis added). In an adverse action, there is no "proposed action" for due process purposes until the agency issues its proposal notice. *Hodges v. U.S. Postal Service*, 118 M.S.P.R. 591, ¶ 6 (2012).

§ I(2)(a)(i) (requiring that the notice of proposed adverse action include "[t]he charge(s) and specification(s) for each charge, including a description of the evidence that supports the charge(s)"). However, as the court explained in *Gargiulo*, the right to such notice is not constitutional, but statutory, or in this case, a matter of agency policy. 717 F.3d at 1186. Hence, as to the charge, the agency was not obliged as a matter of constitutional due process to notify the appellant of the specific reasons for the suspension of his security clearance. *Id*. Rather, it was sufficient for the agency to inform the appellant that his position required a security clearance, and that he could no longer hold his position once he had lost his clearance. *See Hesse*, 217 F.3d at 1381-82. The appellant received adequate notice of these essential facts, *see* IAF, Tab 6, Subtab 4G, and there is no indication that he would have been denied the chance to contest those facts had he been so inclined.

<u>If there are viable alternatives to indefinite suspension, due process requires that the employee be afforded an opportunity to invoke the discretion of a deciding official with authority to select such alternatives.</u>

¶26        Regarding the penalty, the appellant has argued that he was denied a meaningful opportunity to persuade the deciding official to take an action other than the proposed indefinite suspension. In *Gargiulo*, our reviewing court declined to address what due process would be required had the petitioner in that case claimed entitlement to a penalty other than suspension without pay. *See* 727 F.3d at 1185 n.4. Because the appellant in this case has asserted that the agency denied him due process concerning the penalty imposed, that question is now before us.

¶27        As the Court recognized in *Loudermill*, the right to invoke the deciding official's discretion exists only "in such cases" where there is doubt as to the appropriateness or necessity of the penalty. 470 U.S. at 543. For example, there is no due process right "to insist on a hearing in order to argue that the decisionmaker should be lenient and depart from legal requirements." *Id*. at 543

n.8 (citing *Dixon v. Love*, 431 U.S. 105, 114 (1977)); *see, e.g.*, *Delong v. Department of Health & Human Services*, 264 F.3d 1334, 1342-43 (Fed. Cir. 2001) (where the petitioner's criminal record required her removal pursuant to 25 U.S.C. § 3207, due process did not require that she be afforded a hearing on the issue of her fitness for service in a covered position). Due process does not demand that the deciding official consider alternatives that are prohibited, impracticable, or outside management's purview.

¶28    However, to the extent there may have existed viable alternatives to suspension without pay, e.g., placement on administrative leave, the appellant had a due process right to invoke the discretion of a deciding official with authority to select such alternatives. *See Loudermill*, 470 U.S. at 543. Here, the deciding official declared under penalty of perjury that he had authority under the agency's discipline procedures to choose alternatives to the proposed indefinite suspension, including the appellant's requested outcome of continued placement on administrative leave. RAF, Tab 13 (Declaration). The appellant has not rebutted that evidence, and we conclude that he was afforded an opportunity to invoke the discretion of a deciding official with authority to change the outcome of the proposed action to the extent that may have been feasible.

Due process requires notice of the facts underlying the clearance suspension to the extent those facts are considered in determining the penalty.

¶29    The appellant asserts that he was nonetheless denied a meaningful opportunity to invoke the deciding official's discretion because he was not provided with all of the information on which the deciding official relied in deciding to indefinitely suspend him. PFR File (B-1), Tab 3 at 6-7. In particular, he cites the deciding official's declaration that he "considered the facts regarding [the appellant's] alleged fraudulent time and attendance reports in reaching [the] decision to indefinitely suspend [the appellant]." RAF, Tab 13 (Declaration). Based on that statement, the appellant concludes that the deciding official "apparently" considered evidence regarding the alleged fraudulent claims beyond

what he was provided in the proposal notice and the notice of his clearance suspension.  PFR File (B-1), Tab 3 at 7.

¶30        To enjoy the right to be heard, an individual must first be notified. *Fuentes*, 407 U.S. at 80 (citing *Baldwin v. Hale*, 68 U.S. 223, 1 Wall. 223, 233 (1863)); *see Loudermill*, 470 U.S. at 546 ("The essential requirements of due process . . . are notice and an opportunity to respond.").  In *Stone*, 179 F.3d at 1376, our reviewing court held that introduction of new and material information to the deciding official through ex parte communications undermines the due process guarantee of notice and an opportunity to respond because the employee is no longer on notice of all the reasons for the action and/or the evidence relied upon by the agency.  In determining if an ex parte communication introduces new and material information, the Board considers, among other factors, whether:  (1) the ex parte communication merely introduces cumulative information or new information; (2) the employee knew of the error and had a chance to respond to it; and (3) the ex parte communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner.  *Id.* at 1377.  Ultimately, the inquiry is whether the deciding official's consideration of the additional material was so substantial and so likely to cause prejudice that no employee could fairly be required to be subjected to a deprivation of property absent an opportunity to respond.  *Id.*

¶31        Concerning the charge, any additional information the deciding official may have considered could not have been new and material because the only information material to the charge was that the appellant's position required a security clearance and that his clearance was suspended.  For purposes of the *Stone* analysis, however, there is no basis for distinguishing between those ex parte communications relating to the charge and those relating to the penalty. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1280 (Fed. Cir. 2011).  As the court explained in *Ward*, "if ex parte communications influence a deciding official's penalty determination, contributing to the enhancement of the penalty . . . the

communications impact the employee's property interest in continued employment no less than if they relate to the underlying charge." *Id.* To the extent the deciding official's penalty determination was influenced by the factual basis for the underlying security clearance determination, the appellant was entitled to notice of the information on which he relied, even if due process would not have required such notice regarding the charge alone.

¶32    The appellant has not shown, however, that his due process rights were compromised by ex parte communications. First, it is unclear that any ex parte communication in fact took place. The deciding official's statement that he "considered the facts regarding [the appellant's] alleged fraudulent time and attendance reports" is vague, and could refer to nothing more than the fact that PSD cited those alleged fraudulent reports as a basis for suspending the appellant's security clearance. That information had already been provided to the appellant in the proposal notice. Moreover, even if the deciding official did consider additional information concerning those reports, beyond what was included in the proposal notice, the appellant has not established that the information considered was new and material. Accordingly, we find the appellant has not shown that he was denied a meaningful opportunity to invoke the deciding official's discretion regarding the penalty determination. In sum, we conclude that the appellant has not shown that he was denied due process.

The appellant did not establish that the agency committed harmful error.

¶33    To prove harmful procedural error, an appellant must prove that the agency committed an error in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *See* 5 C.F.R. § 1201.56(c)(3). The relevant procedures in this case are set forth in the MD 1100.75-3 Handbook, which provides, inter alia, that an employee facing an adverse action receive written notice stating the charges and specifications and a description of the evidence that supports the charge. MD 1100.75-3 Handbook (2009), § I(2)(a)(i).

The directive further provides that the employee is entitled to see the materials relied upon to support each charge and specification. *Id*., § I(2)(a)(x). In addition, the employee must be provided an opportunity to respond orally and in writing to a deciding official who will consider the replies and decide the outcome based on all of the evidence of record and the applicable *Douglas* factors. *Id*., § I(2)(c). The appellant asserts that the agency violated its procedures because the decision to indefinitely suspend him was based on information that the agency failed to disclose, and that the agency failed to provide him a meaningful opportunity to address the underlying accusations before indefinitely suspending him. PFR File, Tab 3 at 7-8.

¶34        Where an agency indefinitely suspends an employee under chapter 75 based on the suspension of a security clearance, 5 U.S.C. § 7513 requires that the appellant be provided sufficient information to make an informed reply, including a statement of the reasons for the clearance suspension. *See Cheney*, 479 F.3d at 1352-53; *Alston*, 75 F.3d at 662. The same general principles apply in determining whether the agency committed harmful error concerning the similar notice requirement of MD 1100.75-3. *See Buelna*, 118 M.S.P.R. 115, ¶ 19. Here, the notice suspending the appellant's security clearance, coupled with the notice proposing his indefinite suspension, informed him of the basis for the suspension of his security clearance, i.e., the alleged fraudulent claims. We find this was sufficient information to allow for an informed response, as required under agency procedures. *See Alston*, 75 F.3d at 662 (finding that the agency provided the employee with sufficient information to make an informed reply when it notified him that his security clearance was being suspended because of "a potential medical condition" and then informed him that he was being indefinitely suspended from duty based on the suspension of his security clearance); *cf. Cheney*, 479 F.3d at 1353 (finding that the employee was not provided with the opportunity to make a meaningful response to the notice of

proposed suspension where he had to guess at the reasons for his security clearance suspension).

¶35    Furthermore, as mentioned above, the appellant has not shown by preponderant evidence that the agency failed to provide any additional evidence on which the deciding official relied.  Moreover, assuming arguendo that the agency did commit procedural error in that regard, the appellant has not shown that the agency was likely to have reached a different decision in the absence of that error.  Finally, as discussed above, the appellant was provided the opportunity to respond orally and in writing to a deciding official with authority to decide the outcome of the proposed indefinite suspension.  We therefore affirm the administrative judge's finding that the appellant failed to establish harmful error.  Accordingly, we AFFIRM the administrative judge's determination to sustain the appellant's indefinite suspension.

## ORDER

¶36    This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held

that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

in

*Alexander Buelna v. Department of Homeland Security*

MSPB Docket No. DA-0752-09-0404-B-1

¶1      I agree with the majority's description of the background and issues to be decided in this case (Majority Opinion, ¶¶ 2-12) and their findings that: the appellant was entitled to due process concerning his indefinite suspension (*Id.,* ¶ 13); the Board has authority to review whether the agency provided the appellant due process in indefinitely suspending him (*Id.,* ¶¶ 14-15); due process required that the deciding official have the authority to select alternative penalties other than suspension without pay (*Id.,* ¶ 28); due process required notice of the facts underlying the clearance suspension to the extent that those facts were considered in determining the penalty (*Id.,* ¶¶ 29-32); and, the appellant did not establish that the agency committed harmful error (*Id.,* ¶¶ 33-35). Furthermore, I conclude, as does the majority, that the agency did not violate the appellant's due process rights in indefinitely suspending him based upon the suspension of his security clearance. However, I fundamentally disagree with my colleagues as to their delineation of the process to which the appellant was entitled under the Fifth Amendment.

¶2      In *Gargiulo v. Department of Homeland Security*, 727 F.3d 1181, 1185 (Fed. Cir. 2013), the U.S. Court of Appeals for the Federal Circuit recognized that the appellant, a Federal Air Marshal, "had due process rights with respect to his indefinite suspension." It did not, however, define what those rights entailed. Rather, the court noted that, under *Egan v. Department of the Navy*, 484 U.S. 518 (1988), the Board's review of an adverse action based on a security clearance revocation is limited to whether a security clearance was denied and was a requirement of the position and whether the 5 U.S.C. § 7513 procedures were followed. *Id.* at 1186. It thereafter found that the Board erred in holding

> as a matter of constitutional due process, that Mr. Gargiulo was entitled to notice of the reasons for the suspension of his security clearance and an opportunity to make a meaningful response regarding those reasons to someone in the agency with the authority to affect that decision. While this court's cases hold that section 7513 grants those rights . . . we have not held that those rights are guaranteed by the Fifth Amendment.

*Id.* at 1186. Thus, the question remains as to what exactly the constitutional right to due process ensures when a tenured federal employee is deprived of a property interest in that employment based upon security clearance determinations.

¶3        Before reaching that question, however, I note my agreement with the majority that we should clarify our recent decisions involving indefinite suspensions based on a suspension of a security clearance. In *Gargiulo*, the Federal Circuit found that the Board reached the merits of the underlying security clearance action in its analysis of the appellant's due process claim and, thereby, exceeded its authority. *Id.* at 1187. Our discussion of due process in *Gargiulo*, and in our prior decision in this appeal, was originally articulated in *McGriff v. Department of the Navy*, 118 M.S.P.R. 89 (2012).

¶4        In *McGriff*, the Board cited *Gilbert v. Homar,* 520 U.S. 924 (1997), which analyzed the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what constitutional process is due a public employee suspended from employment. 118 M.S.P.R. 89, ¶ 27. While not erroneous, that analysis was unnecessary for two reasons. First, in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the U.S. Supreme Court had already distilled the *Mathews* factors to arrive at the fundamental contours of due process, i.e., notice and meaningful opportunity to respond, when a public employee is deprived of a property interest in employment.[*] Moreover, the Board long ago

---

[*] For this reason, I believe that the majority's discussion (Majority Opinion, ¶¶ 16-22) of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and particularly, its application of the

applied *Loudermill* in cases involving indefinite suspension from employment based on a suspension of access to security areas or information. *See Byerline v. Department of the Navy*, 62 M.S.P.R 279, 283 (1994). Second, we ostensibly cited *Homar* for the proposition that constitutional due process may not, in every circumstance, require predeprivation notice and opportunity to respond. 118 M.S.P.R. 89, ¶ 27; *Kriner v. Department of the Navy*, 61 M.S.P.R. 526, 531 (1994). However, the process afforded Mr. McGriff occurred prior to his indefinite suspension, thus, making its timing irrelevant to the question of whether it satisfied the constitutional requirements under *Loudermill*.

¶5    Beyond being unnecessary, our discussion of the second *Homar* factor also unfortunately suggested that the Board was engaged in a review of the merits of the agency's security clearance determination. I believe that *Homar* was not essential to the resolution of the appellant's due process claim and our discussion of it in our prior decisions here and elsewhere risks perpetuating the misapprehension that the Board lacks a proper understanding of our authority in reviewing adverse actions based on security clearance determinations. Therefore, I would modify our prior decisions only to eliminate the discussion of *Homar* and *Matthews* altogether and to examine the appellants' due process claims solely under *Loudermill*.

¶6    In *King v. Alston,* 75 F.3d 657, 659 (Fed. Cir. 1996), the Federal Circuit reviewed a Board decision finding that the agency violated constitutional due process in placing the appellant on enforced leave after suspending his access to classified information. The court recognized that, while no one has a right to a security clearance or access to classified information, an employee as defined by 5 U.S.C. § 7501 "has a property right in his continued employment." *Id.* at 661 (citing *Loudermill)*. It thereafter affirmed that such employees "cannot be

_____

*Mathews* factors to define what constitutional process is due under these circumstances to be unnecessary.

deprived of that interest without the procedural protections provided by 5 U.S.C. § 7513(b)." It went on to hold that "section 7513(b) entitles an employee to notice of the reasons for the suspension of his access to classified information when that is the reason for placing the employee on enforced leave pending a decision on the employee's security clearance. Such notice provides the employee with an adequate opportunity to make a meaningful reply to the agency before being placed on enforced leave." *Id.* at 661-62. It further held that "[m]erely providing the employee with information that his access to classified information is being suspended, without more, does not provide the employee with sufficient information to make an informed reply to the agency before being placed on enforced leave." *Id.* at 662.

¶7        In *Gargiulo*, the court expressly recognized that the appellant had due process rights with respect to his indefinite suspension. 727 F.3d at 1185. At the same time, it found that the Board erred in holding that the appellant was entitled as a matter of constitutional due process to notice of the reasons for the suspension of his security clearance and an opportunity to make a meaningful response regarding those reasons to someone in the agency with the authority to affect that decision. *Id.* at 1186. This designation of error seems to me to be at odds with *King v. Alston,* which plainly, albeit tacitly, equated the constitutional due process afforded a federal employee facing deprivation of his property interest in continued employment with the right to notice and opportunity to respond under section 7513(b). Moreover, the court's insistence in *Gargiulo* that the rights "to notice of the reasons for the suspension of his security clearance and an opportunity to make a meaningful response regarding those reasons to someone in the agency with the authority to affect that decision" derive solely from 5 U.S.C. § 7513(b) seems to imply that these rights do not also comprise the elements of constitutional due process. *Id.* at 1186. If constitutional due process demands something less than what the statute compels in these cases, then how

does one define it consistent with *Loudermill's* dictate for notice and *meaningful* opportunity to respond? The court has left this question unanswered.

¶8     I disagree with the majority's answer—that it is sufficient for due process in this context "for the agency to inform the appellant that his position required a security clearance, and that he could no longer hold his position once he lost his clearance"—because it renders the process utterly void of meaning and is contrary to *Loudermill*. It also inexplicably departs from longstanding Board precedent. In *Kriner*, the Board held that "[w]hen a suspension is based on restriction of the employee's security access, the agency is required to provide the employee a meaningful opportunity to respond to the reasons for the suspension by ensuring that either in the advance notice of that action, or in the earlier access determination, the employee has been notified of the cause that led to the access determination." 61 M.S.P.R. at 533. Similarly, in *Byerline*, the Board concluded that "where an indefinite suspension is based on the revocation of access to security areas or information, the agency must provide the appellant with a meaningful opportunity to respond to the reasons for the indefinite suspension *by ensuring that either in the advance notice of that action, or in the earlier access determination, he has been notified of the cause that led to the access determination*." 62 M.S.P.R. at 283 (emphasis added). The Board went on to say that "only in this manner does the agency assure that the appellant is afforded meaningful due process with respect to his constitutionally protected property interest in his employment." *Id.* Likewise, in *Alston*, the court recognized that when an adverse action is based upon the suspension of a security clearance, merely providing the employee with notice of the clearance action, without more, does not "provide the employee with sufficient information to make an informed reply to the agency" as to the adverse action. *Id.* at 662.

¶9     The majority cites *Gargiulo* in finding that the agency "was not obliged as a matter of constitutional due process to notify the appellant of the specific reasons for the suspension of his security clearance." Majority Opinion, ¶ 25. I do not

believe that *Gargiulo* compels that conclusion. Rather, the court objected to the characterization of the statutory rights to notice and opportunity to respond as a constitutional guarantee that the Board "may delineate and enforce" as contrary to precedent holding that there are no due process rights attaching to security clearance determinations. 727 F.3d at 1186. However, its criticism is essentially premised on the notion that, by recognizing the constitutional dimension of these rights, the Board improperly presumed the authority to review the merits of the security clearance decision in derogation of *Egan*. However, in *Alston,* the court reviewed a similar claim by the Office of Personnel Management that, by recognizing the appellant's right to notice of the reasons for the security clearance action, the court and the Board were reviewing the merits of the agency's decision to suspend his clearance or to review the procedures used in denying such access. 75 F.3d at 662. As the court explained, *Egan* "does not foreclose board review of the procedures used by the agency" in effecting the adverse action. *Id.* at 662-63. Similarly, in *Kriner*, the Board fully reconciled the limitations on its review under *Egan* with the constitutional due process demands of *Loudermill*:

> In security clearance cases, the Board's authority to determine whether the agency has provided minimum due process is made clear when the Supreme Court's decisions in *Egan* and *Loudermill* are read together, as they must be. The right to a full, evidentiary post-termination hearing recognized by *Loudermill* does not confer a right to merits review by the Board in these cases because under *Egan* the commitment by law of security clearance determinations to the discretion of the employing agency precludes review by an outside body like the Board. However, nothing in *Egan* excused the employing agency from providing the employee the pre-termination opportunity to be heard which *Loudermill* requires, and as, as noted above, *Egan* recognized the Board's authority to review whether the agency has done so.
>
> Review by the Board of the agency's procedures in a case such as this one does not require the Board to inquire into substantive matters of national security or to second-guess the agency's judgment concerning whether a particular employee is fit for access

> to classified information. Rather, the Board need only make the kind of determinations it routinely makes: whether the agency has given the employee an opportunity to reply to its charges and whether its notice was adequate to give the employee a meaningful opportunity to respond.

61 M.S.P.R. at 531-32.

¶10 Although *Alston* held that section 7513 provides the employee with an adequate opportunity to make a meaningful reply, it does not follow that "[t]hat right . . . is . . . not [also] constitutional." *Gargiulo,* 727 F.3d at 1186. That is, *Alston*'s holding that the right to make a meaningful reply is embodied in section 7513 must be read consistently with *Loudermill*'s holding that the right to make a meaningful reply is guaranteed by the Fifth Amendment. If merely providing the employee with notice of the clearance action, without more, fails to provide the employee with sufficient information to make an informed reply under section 7513(b), *see Alston,* 75 F.3d at 662, it also fails to provide the employee with sufficient information to make a meaningful reply under the Fifth Amendment, *see Loudermill,* 470 U.S. at 546.

¶11 I believe that the only logical conclusion that can be reached from *Loudermill* and *King v. Alston* is that an appellant with a constitutionally-protected property interest in employment cannot be indefinitely suspended pending a security clearance determination without being afforded the due process guaranteed by the Fifth Amendment and that the essential elements of that constitutional due process are the notice and opportunity to respond described in [5 U.S.C. § 7513](b). I also believe that *Gargiulo* does not expressly define constitutional due process as anything other than what the court said it was in *Alston*. But even if it did, then I believe that the Board is obliged to follow *Alston* pursuant to the Federal Circuit's judicial practice wherein the precedential decision of the court is the first decision that was issued unless overruled by an *en banc* decision. *See Bosley v. Merit Systems Protection Board*, [162 F.3d 665](#), 672 (Fed. Cir. 1998).

¶12     Regardless of my disagreement with the majority on these issues, I concur with the decision to sustain the appellant's indefinite suspension because I believe the record shows that the agency provided the appellant with notice and opportunity to respond to the proposed indefinite suspension by providing him with the specific basis for the suspension of his security clearance and by delegating the proposed action to a deciding official with the authority to change the outcome of a proposed indefinite suspension.  Accordingly, the appellant was afforded the minimum due process required by the Constitution.  *McGriff*, 118 M.S.P.R. 89, ¶ 33.


_____

Anne M. Wagner
Vice Chairman